[No. 21628-4-III.   Division Three.   July 27, 2004.]

WEBER CONSTRUCTION, INC., *Appellant*, v. SPOKANE COUNTY, *Respondent*.

*Daniel S. McMonagle, Jr.*, for appellant.

*Patrick M. Risken* and *Mark A. Wheeler* (of *Evans, Craven & Lackie, P.S.*) and *Timothy M. Durkin*, for respondent.

*Paul R. Cressman, Jr., John P. Ahlers*, and *Bruce A. Cohen*, amici curiae.

¶1 KATO, C.J. — Spokane County (County) hired Weber Construction, Inc., to build a road. The project was neither finished on time nor within budget because Weber encountered large boulders it was unable to use to create fill. Weber sued the County for additional compensation. The trial court entered judgment as a matter of law under CR 50 for the County. In March 2003, this court reversed the judgment and determined that whether the County's actual notice of Weber's problems with the project constituted a waiver of the contract notice provision was a question for the trier of fact. Our Supreme Court accepted review and remanded for reconsideration in light of *Mike M. Johnson,*

*Inc. v. Spokane County*, 150 Wn.2d 375, 78 P.3d 161 (2003). Determining on reconsideration that Weber presented substantial evidence it either complied with the contractual notice provisions or the County waived strict contractual compliance so as to prevail on the merits, we reverse the trial court and remand for new trial.

¶2 Weber contracted with the County to build a 4.2 mile section of Curtis Road. Upon beginning its excavation, Weber encountered several large boulders unsuitable for fill and embankments. It therefore had to obtain fill from another site. This increased the cost of the project and delayed its completion as well.

¶3 Weber sued the County for additional compensation. The County's motion for summary judgment was denied. The case proceeded to trial.

¶4 The sole issue was whether the subsurface conditions encountered by Weber constituted a differing site condition under the contract. At the close of Weber's case in chief, the County moved for judgment as a matter of law under CR 50. It argued Weber did not follow the contract procedure for a formal protest, a jurisdictional prerequisite to filing a claim. The court granted the motion. This court determined that the evidence showed the County had actual notice of Weber's problems with the project and whether this knowledge constituted a waiver of strict compliance with the contractual notice provisions was a question of fact for the jury to decide. *Weber Constr., Inc. v. Spokane County*, noted at 116 Wn. App. 1007, slip op. at 8 (2003).

¶5 The Supreme Court directed us to reconsider our prior decision in light of *Johnson*. There, Johnson was hired to construct two sewer projects for Spokane County. *Mike M. Johnson, Inc.*, 150 Wn.2d at 378. During the course of construction, Johnson discovered a buried telephone line that forced the construction to stop while Spokane County and the telephone company worked out the utility conflict. *Id.* at 379. The contract required Johnson to use mandatory notice, protest, and formal claim procedures to make claims of additional compensation, time extensions, and changed

conditions. The contract stated that "[f]ull compliance by the Contractor with the provisions of this section is a contractual condition precedent to the Contractor's right to seek judicial relief." *Id.* at 380.

¶6 Rather than follow mandatory protest and formal claim procedures, Johnson sent the County a letter addressing several concerns. The County answered by telling Johnson to submit a complaint under the procedure in the contract. Johnson responded with another letter. The County again advised Johnson that it did not consider the letters as any formal notification of a claim and asked Johnson to follow the terms and conditions for a protest as set forth in the contract. *Id.* at 381-82. Johnson continued to send letters. *Id.* The County continued to respond that it was not waiving any claims or defenses and noted Johnson's ongoing refusal to follow the procedure in the contract. *Id.* at 382-83.

¶7 Johnson eventually sued the County for additional compensation. The County argued that Johnson failed to comply with the protest provisions. *Id.* at 384. The trial court ordered summary judgment dismissal. *Id.* at 385. Finding that material questions of fact existed as to whether the County's actual notice of the claims excused Johnson from complying with the mandatory contractual protest and claim procedures, this court reversed. *Id.*

¶8 Accepting review, the Supreme Court held that a contractor must follow contractual notice provisions unless these procedures are waived. *Id.* at 386. Actual notice was not an exception to contractual compliance. *Id.* at 392. But a waiver could be implied through conduct, which must be unequivocal and evidence an intent to waive. *Id.* The Supreme Court reversed this court's decision and held that summary judgment dismissal of the claims was proper. *Id.* at 393.

¶9 Weber claims that its case is distinguishable from *Johnson* because it did indeed comply with the contractual protest and claim provisions and the County's actions

evidenced an intent to waive compliance with those provisions in any event.

¶10  CR 50(a)(1) authorizes a court to grant judgment as a matter of law if "there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." *Sing v. John L. Scott, Inc.*, 134 Wn.2d 24, 29, 948 P.2d 816 (1997). In considering a motion for judgment as a matter of law, a court must treat the nonmoving party's evidence as true and draw all reasonable inferences from that evidence. *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 187-88, 23 P.3d 440 (2001). Review is de novo. *Id.*

¶11  The contract here required the parties to abide by the 1988 standards for road construction. Section 1-04.5 detailed the protest procedure, the same provision at issue in *Johnson*. That section states:

> If in disagreement with anything required in a change order, another written order, or an oral order from the Engineer, including any direction, instruction, interpretation, or determination by the Engineer, the Contractor shall:
>
> 1. Immediately give a signed written notice of protest to the Project Engineer or the Project Engineer's field inspectors before doing the work;
>
> 2. Supplement the written protest within 15 calendar days with a written statement providing the following:
>
> a.  The date of the protested order;
>
> b.  The nature and circumstances which caused the protest;
>
> c.  The contract provisions that support the protest;
>
> d.  The estimated dollar cost, if any, of the protested work and how that estimate was determined; and
>
> e.  An analysis of the progress schedule showing the schedule change or disruption if the Contractor is asserting a schedule change or disruption; and
>
> 3. If the protest is continuing, the information required above, shall be supplemented as requested by the Project Engineer. In addition, the Contractor shall provide the Project Engineer, before final payment, a written statement of the actual adjustment requested.

Ex. 2 at 1-23. The section also provides that failure to comply with the procedures of sections 1-04.5 and 1-09.11 waived any claim for protested work.

¶12 On August 12, 1999, the County entered Change Order No. 1 permitting hauling of extra material from an on-site private quarry that Weber chose not to use. *Weber*, slip op. at 2. The reason for the change order was the unsuitability of many large boulders for use in shallow fills and for building embankments. *Id.*

¶13 On August 19, 1999, Weber filed a protest to this order as required by section 1-04.5. This protest asked the County to instruct Weber how to dispose of the boulders once the space at the borrowed site was filled. On August 31, 1999, Weber supplemented its protest by a letter in which it acknowledged that a cost estimate was required but stated an estimate could not be provided because the County had failed to designate a dumpsite for the unusable boulders.

¶14 Section 1-04.5 requires "[t]he estimated dollar cost, if any, of the protested work and how that estimate was determined." Here, there was none. Weber indicated no estimated cost existed at the time because it lacked the information to provide that estimate. The County did not provide the requested information so Weber could not have stated in good faith how any such estimate was determined. In these circumstances, Weber complied with the contract terms when the evidence is viewed as true and all reasonable inferences are drawn from that evidence. Acknowledging the need to provide an estimate and telling the County why it was unable to do so, it also advised the County what information it needed to provide the estimate. Weber presented substantial evidence that it complied with the protest procedures set forth in section 1-04.5.

¶15 The 1998 specifications include a second section on claim procedures in section 1-09.11, which provides that if the protest procedures in section 1-04.5 did not result in a satisfactory conclusion, the contractor must follow the more formalized claim procedures in this section. There was no

resolution following the procedures in section 1-04.5. On March 10, 2000, Weber filed a claim in conformity with section 1-09.11(2). Again, Weber has presented substantial evidence that it complied with this contract provision and thus preserved its right to seek judicial relief.

¶16 Weber also claims the County, by its conduct, evidenced an intent to waive strict contractual compliance. On July 13, 1999, prior to the change order being filed, the County wrote a letter to Weber indicating that some of the material on the site was unsuitable to use for fill. How much was unsuitable and how much needed to be replaced was unknown. On August 12, 1999, the County issued the change order permitting the hauling of extra material as a result of the acknowledged unsuitability of the boulders on site. Weber wrote to the County on August 15, 1999, protesting the change order and asking where it should dispose of the unusable boulders. On August 31, it supplemented its protest and again informed the County it could not make a cost estimate because the County had not told Weber where to dispose of the boulders.

¶17 The County knew that Weber was required to provide a dollar cost estimate. It knew Weber was aware of this requirement and was attempting to meet it. Weber requested needed information in order to provide that estimate, but the County failed to give it to Weber. Weber offered substantial evidence that the County, by its conduct, waived strict compliance with the contract terms.

¶18 Moreover, we adhere to our previous decision that reasonable minds could differ on the issue of foreseeability with respect to the quantity and quality of the boulders encountered by Weber being a "differing site condition" or a "changed condition." Accordingly, the court erred by entering judgment as a matter of law when the issue should have been left to the jury.

¶19 Weber presented substantial evidence that it strictly complied with protest and claim procedures and that the County, by its conduct, waived strict compliance in any event. The jury must also resolve the foreseeability ques-

tion in determining whether there was a "differing site condition" or a "changed condition." The court erred by granting judgment to the County as a matter of law under CR 50.

¶20 Reversed and remanded for new trial.

SCHULTHEIS and BROWN, JJ., concur.

Review denied at 154 Wn.2d 1006 (2005).