[No. 41563-1-II.   Division Two.   March 13, 2012.]

REALM, INC., *Appellant*, v. THE CITY OF OLYMPIA, *Respondent*.

2

*Thomas F. Miller* and *Jennifer M. Modak* (of *Miller Law Office PS*), for appellant.

*William A. Linton* (of *Inslee, Best, Doezie & Ryder PS*), for respondent.

*Michael P. Grace* and *Tymon Berger* on behalf of Associated General Contractors of Washington, amicus curiae.

¶1 WORSWICK, A.C.J. — Realm Inc. entered into a contract with the city of Olympia to build a fish passage tunnel. The city subsequently ordered Realm to stop work and terminated the contract for public convenience. After an audit, the city determined the amount it believed was due to Realm, and Realm accepted payment. Realm then sued the city, seeking additional compensation. The city moved for summary judgment, which the trial court granted. We affirm, holding that Realm waived the right to sue by failing to comply with notice provisions that were, by contract, a precondition to litigation by Realm against the city.

## FACTS

¶2 On June 18, 2008, the city awarded Realm a contract to build a tunnel that would serve as a fish passage route for salmon. Realm began work on the project, but the city ordered Realm to stop all work on September 9, finding that Realm had failed to maintain the required grade, to retain staff with appropriate expertise, to properly shore the construction, and to achieve adequate progress. On September 30, the city terminated the contract.

¶3 On December 29, Realm submitted a claim to the city for work performed on the project, seeking $1,109,418.75. The city employed an auditing firm that determined the city owed Realm $535,852.00. After Realm refused to sign a change order agreeing to that amount, the city unilaterally issued the change order and issued a check to Realm. Realm cashed the check.

¶4 Realm sued the city, alleging breach of contract for the city's failure to pay Realm the full amount Realm had claimed. The city moved for summary judgment, arguing

4

that Realm had waived its claim by failing to comply with the contract's notice provisions and that Realm's acceptance of payment constituted an accord and satisfaction. The trial court granted summary judgment to the city.[1] Realm appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

¶5 Summary judgment is appropriate where, viewing all facts and resulting inferences most favorably to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Briggs v. Nova Servs.*, 166 Wn.2d 794, 801, 213 P.3d 910 (2009); CR 56(c). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We review a grant of summary judgment de novo. *Briggs*, 166 Wn.2d at 801.

### II. CONTRACTUAL NOTICE REQUIREMENT

¶6 Realm argues that it was not required to comply with contractual notice provisions because its dispute with the city did not arise until after the city terminated the contract. We disagree, holding that Realm was required to comply with the notice provisions even after termination.

¶7 The " 'touchstone of contract interpretation is the parties' intent.' " *Durand v. HIMC Corp.*, 151 Wn. App.

---

[1] The trial court's order granting summary judgment does not specify its basis, and the record does not contain any transcript of the court's oral ruling. But the parties agree that the trial court did not reach the issue of accord and satisfaction. Because we affirm summary judgment based on interpretation of the contract, we do not reach accord and satisfaction. *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 68, 1 P.3d 1167 (2000) (" 'Principles of judicial restraint dictate that if resolution of an issue effectively disposes of a case, we should resolve the case on that basis without reaching any other issues that might be presented.' " (internal quotation marks omitted) (quoting *State v. Peterson*, 133 Wn.2d 885, 894, 948 P.2d 381 (1997))).

818, 829, 214 P.3d 189 (2009) (quoting *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wn.2d 656, 674, 911 P.2d 1301 (1996)), *review denied*, 168 Wn.2d 1020, 231 P.3d 164 (2010). Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Contract interpretation is a question of law when, as here, the interpretation does not depend on the use of extrinsic evidence. *Dice v. City of Montesano*, 131 Wn. App. 675, 684, 128 P.3d 1253 (2006) (quoting *Tanner Elec. Coop.*, 128 Wn.2d at 674).

■■ ¶8 When contract provisions seem to conflict, we will harmonize them, with the goal of giving effect to all provisions. *Nishikawa v. U.S. Eagle High, LLC*, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007). "Washington law generally requires contractors to follow contractual notice provisions unless those procedures are waived." *Mike M. Johnson, Inc. v. Spokane County*, 150 Wn.2d 375, 386, 78 P.3d 161 (2003).

¶9 The dispositive issue on review is whether Realm was required to comply with the contract's notice provision after the city terminated the contract. The contract between Realm and the city included the Washington State Department of Transportation, *Standard Specifications for Road, Bridge, and Municipal Construction* (Standard Specifications), which provided the general terms of the contract.

¶10 Section 1-08.10 of the Standard Specifications sets forth the terms relating to termination of the contract. The city terminated the contract under section 1-08.10(2), which authorized it to terminate the contract "for public convenience" if it determined "that such termination is in the best interests of the Contracting Agency." Clerk's Papers (CP) at 209. Under section 1-08.10(3), on termination for public convenience, the contractor shall submit "a request for costs associated with the termination." CP at 209. This request for costs must comply with sections 1-09.11 and 1-09.12.

6

¶11 Section 1-09.12 requires the contractor to comply with audits, while section 1-09.11 instructs the contractor how to file a formal claim under the contract. Section 1-09.11(1) instructs the contractor to first provide notice of disputes under the contract's notice provision, section 1-04.5. A formal claim is authorized only if the issue is not resolved by the formal notice procedures in section 1-04.5.

¶12 Furthermore, section 1-08.10(4) provides that upon termination for public convenience, the contractor will be paid for the actual work performed. It further provides that if the parties cannot agree on the amount due, "the matter will be resolved as outlined in Section 1-09.13." CP at 209. Section 1-09.13, titled "Claims Resolution," provides:

> Prior to seeking claim resolution through nonbinding alternative dispute resolution processes, binding arbitration, or litigation, the Contractor shall proceed under the administrative procedures in *Sections 1-04.5*, 1-09.11 and any special provision provided in the contract for resolution of disputes. *The provisions of these sections must be complied with in full, as a condition precedent to the Contractor's right to seek claim resolution through any nonbinding alternative dispute resolution process, binding arbitration or litigation.*

CP at 229 (emphasis added).

¶13 Thus, two provisions of the contract relating to termination for public convenience refer back to the contract's notice provision, section 1-04.5. A contractor must comply with section 1-09.11 to file a formal claim for the costs associated with termination, which in turn requires compliance with section 1-04.5. And if unable to agree on the compensation due for the actual work performed after termination for public convenience, the contractor must comply with section 1-09.13. Section 1-09.13 requires compliance with section 1-04.5 twice—it directly requires compliance with 1-04.5, and it requires compliance with section 1-09.11, which, as already noted, itself requires compliance with section 1-04.5. Moreover, section 1-09.13 unambiguously requires contractors to comply "in full" with sections

1-04.5 and 1-09.11 as a precondition to litigation, flatly contradicting Realm's argument that it need not comply with section 1-04.5 regarding disputes about the payment due on termination.

¶14 Section 1-04.5 provides:

If in disagreement with anything required in a change order, another written order, or an oral order from the Engineer, including any direction, instruction, interpretation, or determination by the Engineer, the Contractor shall:

1. Immediately give a signed written notice of protest to the Project Engineer or Project Engineer's field inspectors before doing the work;

2. Supplement the written protest within 15 calendar days with a written statement providing the following:

   a. The date of the protested order;

   b. The nature and circumstances that caused the protest;

   c. The contract provisions that support the protest;

   d. The estimated dollar cost, if any, of the protested work and how that estimate was determined; and

   e. An analysis of the progress schedule showing the schedule change or disruption if the Contractor is asserting a schedule change or disruption; and

3. If the protest is continuing, the information required above, shall be supplemented as requested by the Project Engineer. In addition, the Contractor shall provide the Project Engineer, before final payment, a written statement of the actual adjustment requested.

Throughout any protested work, the Contractor shall keep complete records of extra costs and time incurred. The Contractor shall permit the Engineer access to these and any other records needed for evaluating the protest as determined by the Engineer.

The Engineer will evaluate all protests provided the procedures in this section are followed. If the Engineer determines

that a protest is valid, the Engineer will adjust payment for work or time by an equitable adjustment in accordance with Section 1-09.4. Extensions of time will be evaluated in accordance with Section 1-08.8. No adjustment will be made for an invalid protest.

In spite of any protest, the Contractor shall proceed promptly with the work as the Engineer orders.

The Contractor accepts all requirements of a change order by: (1) endorsing it, (2) writing a separate acceptance, or (3) not protesting in the way this section provides. A change order that is not protested as provided in this section shall be full payment and final settlement of all claims for contract time and for all costs of any kind, including costs of delays, related to any work either covered or affected by the change.

By not protesting as this section provides, the Contractor also waives any additional entitlement and accepts from the Engineer any written or oral order (including directions, instructions, interpretations, and determinations).

CP at 194-95 (emphasis omitted).

¶15 Thus, on termination for public convenience, Realm was required to give notice of any disputes regarding both the costs associated with termination and the payment for actual work performed under the contract. And Realm was required to follow this notice with the additional information set forth in section 1-04.5 within 15 days. Realm filed a formal claim for its costs on termination, but it is undisputed that Realm never gave notice under section 1.04-5 in relation to any dispute during or after the contract, including the costs associated with termination and the amount due for the actual work performed. Realm thus failed to give required notice under sections 1-08.10(4) and 1-08.10(3).

¶16 Realm also failed to comply with section 1-04.5, regarding the city's change order setting Realm's final payment. On April 24, 2009, the city sent a proposed change order to Realm's counsel, listing its calculation of the full

and final payment due on the contract.[2] Realm's counsel stated by e-mail that Realm would not sign the change order. The city replied, "In light of the fact that Realm will not execute a bilateral change order, the City will issue it unilaterally." CP at 130. On May 5, the city did so, unilaterally issuing the change order listing the full and final payment.[3]

¶17 Realm did not protest the change order setting final payment. And section 1-04.5 provides that a contractor accepts all requirements of a change order by failing to protest. Thus, in addition to failing to comply with section 1-04.5 regarding the termination for convenience, Realm also failed to comply with section 1-04.5 regarding the city's final change order. Realm has consequently waived its right to sue under the contract.

¶18 Realm's argument to the contrary is understandable due to the somewhat contradictory language of section 1-04.5. But we find Realm's argument ultimately unpersuasive because other wording in the contract clarifies that the provision does not apply only during the work.

¶19 Realm points out that section 1-04.5(1) requires the contractor to protest "before doing the work," and thus Realm argues that section 1-04.5 applies only during the work and not after termination. However, change orders under the Standard Specifications are not limited to requiring a contractor to do additional work—in accordance with section 1-04.4, they may delete work or equitably adjust payment as well. Thus, reading section 1-04.5 in harmony with section 1-04.4, the requirement to protest "before doing the work" applies only when the contractor must perform additional work. A contractor must still comply with section

---

[2] Section 1-04.4 allowed the city to change the contract by written change order, which may add, delete, or modify work to be performed, or may make an equitable adjustment in the payment due to the contractor.

[3] Section 1-04.4 permitted the city to unilaterally issue a change order adjusting the amount due to the contractor if the parties could not agree on the amount.

1-04.5 even when it is not required to perform any additional work.

¶20 The wording of section 1-04.5 bears this interpretation out. Except for the requirement to protest "before doing the work," the section's language regarding additional work is contingent. For instance, it requires contractors to keep records "throughout *any* protested work," showing that the section contemplates orders where no extra work is required. CP at 194 (emphasis added). And it requires contractors to provide the "estimated dollar cost, *if any*, of the protested work and how that estimate was determined," showing the same. CP at 195.

¶21 Moreover, the contract refers to section 1-04.5 in the provisions regarding contract termination. As noted above, a contractor must comply with section 1-09.11 when filing a claim for costs associated with termination, and section 1-09.11 requires compliance with section 1-04.5. And a contractor must comply with section 1-09.13 if in disagreement about the payment due after termination for actual work performed, which again requires compliance with section 1-04.5.

¶22 If section 1-04.5 applied only to situations where the contractor was required to perform additional work, it would not be invoked in provisions relating to contract termination. Because section 1-04.5 applies here and Realm did not comply with it, Realm waived the right to sue for additional compensation under the contract.

¶23 This result is further supported by *Mike M. Johnson*, 150 Wn.2d 375. There, the Supreme Court held that a contractor's failure to protest work under an older version of the Standard Specifications (which contained a version of section 1-04.5 that was identical in all pertinent respects) precluded a lawsuit claiming extra compensation for that work. 150 Wn.2d at 379-80, 384, 390.

¶24 Realm attempts to distinguish *Mike M. Johnson* by arguing that the city here did not issue the change order

until after the contract's termination, while the failure to protest in *Mike M. Johnson* occurred during performance of the contract. But this argument is unavailing. The work that Realm asserts entitled it to extra compensation occurred during the contract's performance and, just as the contractor in *Mike M. Johnson*, Realm was required to protest this work under section 1-04.5 in order to later assert a claim for additional compensation.

¶25 Realm attempts an end run around section 1-04.5 by claiming that it may hold any disputes in reserve until after the contract's termination, at which point notice is no longer required. But such an interpretation, in addition to being inconsistent with *Mike M. Johnson*, would render section 1-04.5 a nullity. All contracting agencies using the Standard Specifications would be denied the benefit of advance notice and the opportunity to resolve disputes before they devolve into litigation because contractors could simply choose to litigate their disputes after termination without providing notice of disputes during the work. This is not the result the contract's plain words command that require notice both during the work and after termination for public convenience.

¶26 If Realm had shown *some* good faith effort to comply with section 1-04.5, we might reach a different result. In *Weber Construction, Inc. v. Spokane County*, 124 Wn. App. 29, 34, 98 P.3d 60 (2004), Division Three of our court allowed a contractor to maintain litigation despite a technical failure to comply with section 1-04.5. There, the contractor provided the required notice of protest, but it failed to include an estimate of the dollar cost of the protested work because under the case's particular facts, it lacked adequate information to make such an estimate. 124 Wn. App. at 34. Had Realm made a similar technically defective attempt to comply with section 1-04.5, we might be persuaded that it provided sufficient evidence of compliance with the contract to escape summary judgment. But instead, inadvertently or not, Realm ignored section 1-04.5 both during and

after the performance of its contract with the city. Because we reject Realm's argument that it was not required to comply with section 1-04.5 simply because the contract was terminated for public convenience, this total failure to even attempt compliance is fatal to Realm's case.

¶27 Realm was required, at the least, to give contractual notice under section 1-04.5 of its dispute regarding the costs on termination, the payment for actual work performed, and the city's final change order. It undisputedly did not do so. We therefore affirm summary judgment.

## ATTORNEY FEES

¶28 The city requests attorney fees under chapter 39.04 RCW and RAP 18.1. We grant attorney fees to the city as the prevailing party.

¶29 RCW 4.84.250 provides that in an action for damages for $10,000 or less, "there shall be taxed and allowed to the prevailing party as a part of the costs of the action a reasonable amount to be fixed by the court as attorneys' fees." And under RCW 4.84.270, a defendant is deemed a prevailing party "if the plaintiff . . . recovers nothing, or if the recovery, exclusive of costs, is the same or less than the amount offered in settlement by the defendant."

¶30 Under RCW 39.04.240,[4] the provisions of RCW 4.84.250-.280 apply to public works contracts, except that the maximum dollar limitation does not apply. A city that prevails on a summary judgment motion and prevails on appeal in a public works contract case may be awarded

---

[4] RCW 39.04.240(1) provides,

The provisions of RCW 4.84.250 through 4.84.280 shall apply to an action arising out of a public works contract in which the state or a municipality, or other public body that contracts for public works, is a party, except that: (a) The maximum dollar limitation in RCW 4.84.250 shall not apply; and (b) in applying RCW 4.84.280, the time period for serving offers of settlement on the adverse party shall be the period not less than thirty days and not more than one hundred twenty days after completion of the service and filing of the summons and complaint.

attorney fees on appeal under RCW 39.04.240. *See Am. Safety Cas. Ins. Co. v. City of Olympia*, 162 Wn.2d 762, 773, 174 P.3d 54 (2007).

¶31 The city offered to settle this case for $60,576.30 within the time period specified by RCW 39.04.240. Realm has recovered nothing, making the city the prevailing party on appeal. We therefore award reasonable attorney fees on appeal to the city under RCW 39.04.240.

¶32 Affirmed.

VAN DEREN and JOHANSON, JJ., concur.

Review denied at 175 Wn.2d 1015 (2012).