IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ODYSSEY-GERONIMO JV, | ) | No. 77743-2-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | ) | |
| DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Respondent. | ) | FILED: July 23, 2018 |

SCHINDLER, J. — Odyssey-Geronimo Joint Venture (OGJV) entered into a contract with the Washington State Department of Transportation (WSDOT) to clean and paint part of the Lewis and Clark Bridge. After completing the project, OGJV filed a lawsuit against WSDOT alleging breach of contract. The court dismissed the lawsuit on summary judgment and awarded fees to WSDOT. We conclude the plain and unambiguous language of the "Special Provisions" of the contract govern and define "surface area" as the "structural steel to be painted" and the "Standard Specifications" do not incorporate by reference the Painting and Decorating Contractors of America (PDCA) "Estimating Guide" or its definition of "surface area." However, we reverse summary judgment dismissal of the claim that OGJV is entitled to an equitable

adjustment and additional compensation and the award of fees and costs. Accordingly, we affirm in part, reverse in part, and remand.

Lewis and Clark Bridge Painting Contract

On February 1, 2010, the Washington State Department of Transportation (WSDOT) issued a request for bids for the "SR[1] 433 Lewis and Clark Bridge Superstructure Painter" contract, "Contract 7895." The contract required "cleaning and painting" of the steel truss latticework bridge "between Piers 1 and 4 as well as a deck truss section under the Washington approach." The contract included the WSDOT 2010 "Standard Specifications for Road, Bridge, and Municipal Construction" (Standard Specifications) and "Special Provisions" for the project.

The Standard Specifications "serve as a baseline for the work" and include mandatory dispute resolution requirements. The Special Provisions identify the portions of the bridge to be cleaned and painted and an estimate of 901,900 square feet for the "surface area of structural steel to be painted." The Special Provisions state, "The surface area of structural steel to be painted as specified above is approximate and is intended for use as a guide in determining the amount of preparation and paint involved."

WSDOT held a prebid meeting with interested contractors in December 2009 to conduct an inspection of the bridge and answer questions. Pennsylvania corporation Odyssey Contracting did not attend the prebid meeting but asked WSDOT for the information provided at the meeting. On February 24, 2010, WSDOT sent Odyssey

---

[1] State Route.

Contracting minutes from the meeting, photographs of the bridge, and a set of "as built" plans.

OGJV Bid

Odyssey Contracting and Ohio corporation Geronimo Painting formed Odyssey-Geronimo Joint Venture (OGJV) to bid on the contract. Neither Odyssey Contracting nor Geronimo Painting had previously performed work in Washington.

In March 2010, OGJV submitted a bid for $33,774,714 and identified lump sum payments for the two major contract tasks: "Cleaning and Painting," bid item 3; and "Containment of Abrasives," bid item 7. OGJV did not visit Washington, prepare its own estimate of the square footage of the surface area of structural steel to be painted, request any additional information, or seek clarification before submitting its bid.

WSDOT Awards OGJV the Contract

On June 8, 2010, WSDOT executed a contract with OGJV for the Lewis and Clark Bridge project. The contract states, in pertinent part:

> The Contractor shall do all work and furnish all tools, materials, and equipment for:
>
> cleaning and painting the metal surfaces and other work on SR 433, MP[2] 0.58 to MP 0.45, LEWIS AND CLARK BRIDGE SUPERSTRUCTURE PAINTER, . . .
>
> . . . as described in the attached plans and specifications, and the standard specifications of the Washington State Department of Transportation which are by this reference incorporated herein and made part hereof and, shall perform any changes in the work in accord with the Contract Documents.

After OGJV submitted a revised painting schedule, WSDOT and OGJV held a "Pre-Painting Conference" meeting." The October 21, 2010 meeting minutes reflect

---

[2] Milepost.

discussion about the schedule, surface preparation, and painting. The minutes do not mention any questions or discussion related to square footage of the surface area of the structural steel to be painted.

After the winter break, OGJV resumed work on the project in March 2011. In June 2011, OGJV used the as-built plans to calculate the square footage for the surface area of the project. OGJV calculated 1,210,440 square feet, or 308,540 square feet more than the approximate 901,900 square feet in the bid contract. The calculation included the air space or "voids" between the steel members of the latticework bridge. OGJV did not notify WSDOT about the calculation. OGJV continued to work on the project through the 2011 and 2012 construction seasons.

Surface Area Dispute

For the first time on December 10, 2012, OGJV informed WSDOT about its calculation of the square feet for the project. OGJV states, "In our performance reviews over the course of the project, we have seen that we have been expending significantly more labor hours and materials on this project than anticipated, based on past projects." The letter states, "[W]e performed a preliminary take-off[3] of the bridge and found a significant discrepancy from that provided in the contract." OGJV asked WSDOT to verify and provide documentation for the Special Provisions surface area square footage calculation.

On January 22, 2013, OGJV provided its calculation and requested a meeting to discuss an equitable adjustment to the contract amount.

---

[3] A "take-off" is a surface area calculation.

WSDOT disagreed with the OGJV surface area calculation:

> In review of the provided surface area calculations, it was noted that the areas of box members are considered to be a solid, flat, continuous surface along the entire length of the box member. This does not accurately calculate the exact surface area of the structure.

WSDOT states the Special Provisions of the contract do not make any reference to the inclusion of voids in calculating the surface area of the structural steel to be painted:

> Page 56 of the Special Provisions refers to the surface area of structural steel to be painted, not surface area plus voids or any other reference that would indicate using a solid area to calculate area where there are voids. OGJV was informed by WSDOT in a meeting on June 4th, 2013 that in order to evaluate calculations of the surface area, OGJV would need to provide the calculations of the actual surface area.

In response, OGJV claimed inclusion of voids in calculating surface area is "widely if not universally accepted by other bridge painting contractors." The October 21 letter states the "surface area calculations are a reasonable and accurate basis to evaluate its prior request for an equitable adjustment to the contract price." OGJV "estimates that it has performed additional surface preparation and painting, as a result of this error, for 339,980 SF"[4]; 38 percent more than the contract estimate of 901,900 square feet, resulting in additional costs of $10,896,359. OGJV renewed its "prior request for a change order and/or equitable adjustment to the contract price." OGJV completed the Lewis and Clark Bridge cleaning and painting project on May 29, 2014.

Change Order 8

After several months of reviewing the calculations, WSDOT concluded the surface area of the structural steel to be painted was 998,191 square feet and not the estimated 901,900 square footage in the contract. On September 5, 2014, WSDOT

---

[4] Square feet.

informed OGJV it would adjust and increase the amount paid for cleaning and painting by 10.7 percent, or $1,483,448. WSDOT informed OGJV it needed additional information to determine whether the same percentage applied to containment of abrasives. OGJV disputed the accuracy of the WSDOT calculation.

On November 13, 2014, WSDOT unilaterally issued "Change Order 8." Change Order 8 states OGJV is entitled to an equitable adjustment payment of $1,562,198 for cleaning and painting and containment of abrasives.

Disputes Review Board

In accord with section 1-09.11(1) of the contract, OGJV and WSDOT agreed to submit the dispute over the surface area of structural steel to be painted to a three-member Disputes Review Board (DRB). OGJV and WSDOT each selected one member and those two members selected the third member.

The DRB held a hearing on January 6, 2015. OGJV "agree[d] that the contract language is clear and unambiguous." OGJV argued the Standard Specifications incorporate by reference the Painting and Decorating Contractors of America (PDCA) "Estimating Guide" definition of "surface area" and lattice members of the bridge are treated as "solid surfaces." OGJV asserted the contract "underrepresented the quantity of work that [OGJV] completed" and asked to "be equitably compensated."

WSDOT asserted that under the terms of the contract, the Special Provisions, not the Standard Specifications, control. WSDOT argued the plain and unambiguous language of the Special Provisions does not include empty spaces or voids in the calculation of the square footage of "surface area of structural steel" to be painted.

On February 9, 2015, the DRB issued findings and a recommendation. The findings and recommendation identify the "Agreed Statement of Dispute" as follows:

The Contract states, (Special Provision page 56):

"The surface area of structural steel to be painted as specified above is approximate and is intended for use as a guide in determining the amount of preparation and paint involved".

WSDOT proposes that this statement simply describes "The surface area of structural steel to be painted" (excluding voids.)

OGJV believes this statement describes the surface area in terms of being an industry standard . . . ["]guide in determining the amount of preparation and paint involved" (including voids.).[5]

The DRB found the Special Provisions, not the Standard Specifications, control. The DRB concluded the disputed language in the Special Provisions is unambiguous and clear and "does not include voids." The DRB rejected the OGJV argument that " '[i]f the area is provided by the owner, it must conform to the model used by the painting industry (which includes voids) or otherwise explicitly states that it does not.' " The DRB unanimously recommended that "the WSDOT interpretation of the Special Provisions is correct and that voids are excluded." The DRB recommended adhering to the 10.7 percent equitable adjustment for both cleaning and painting and containment of abrasives.

Formal Claim

On April 2, 2015, OGJV submitted a formal claim in accord with section 1-09.11(2) of the contract. The "Formal Claim" states, "Both parties agree that the Contract underrepresented the quantity of work that [OGJV] completed."

---

[5] Emphasis in original.

OGJV claimed the contract incorporated by reference the PDCA "Estimating Guide" definition of "surface area" that supported its calculation.

> Using the contract referenced definition of "surface area", it has since been determined by OGJV, and verified afterwards independently by a 3rd party professional, that the surface area of the Work completed is 38% greater than the original contract quantity provided by WSDOT.

OGJV also claimed the recent WSDOT recalculation of the surface area to be painted "contains omission and summation errors; the extent of which cannot be determined due to the lack of information provided by WSDOT." OGJV asserted it was entitled to "additional compensation" for the "two major lump sum items" for cleaning and painting and containment of abrasives "in an amount proportional to the surface area quantity omitted by WSDOT at bid time." OGJV requested an additional payment of $11,412,433.43.

OGJV Lawsuit against WSDOT

On July 16, 2015, OGJV filed a "Complaint for Money Damages and Declaratory Relief" against WSDOT. OGJV asserted breach of contract and quantum meruit.

The complaint alleged the contract incorporated by reference "certain industry standards that governed the work" and defined "surface area."

> WSDOT, in its bid documents, incorporated certain industry standards that governed the work, including the definition of surface area that was critical to the bidders' calculation of lump sum costs for Items #3 and #7. These industry standards have been followed on literally every other bridge painting project in Odyssey's and Geronimo's decades of prior work on public improvement projects.

The complaint alleged WSDOT used industry standards in calculating the surface area of structural steel to be painted:

> WSDOT's bid documents presented the surface area quantity of the bridge as 901,900 square feet (sf) and directed bidders to use it to prepare

their bid. WSDOT[ ] erred when it calculated the surface area of 901,900 sf. Upon information and belief, WSDOT attempted to calculate the surface area using the industry standard definition incorporated into the bid and Contract.

The complaint also alleged that the "actual calculation" of surface area "resulted in the omission of significant portions of surface area" and WSDOT "did not disclose their calculations or supporting documents at the time of bid." OGJV alleged, "WSDOT's acts and/or omissions in miscalculating surface area and failing to provide equitable adjustments to the Contract price constitute substantial and material breaches of the Contract." OGJV sought judgment in "an amount exceeding $9,334,161."

Summary Judgment Dismissal of Lawsuit

On August 25, 2016, WSDOT filed a motion for summary judgment dismissal of the lawsuit. WSDOT noted the motion for hearing on September 23.

WSDOT argued the plain and unambiguous language "surface area of structural steel to be painted" does not include empty spaces or voids. WSDOT asserted the PDCA Estimating Guide that OGJV relied on to claim surface area includes voids is not clearly and unequivocally incorporated by reference into the contract. WSDOT conceded the Standard Specifications incorporate by reference "Technology Update No. 9" and Technology Update No. 9 refers to the PDCA Estimating Guide. But WSDOT argued Technology Update No. 9 does not incorporate the PCDA standards into the WSDOT contract.

On September 9, OGJV filed a "Motion for Summary Judgment Re: Liability on OGJV Contract Claim." OGJV noted the motion for hearing on October 7. OGJV asserted the court should grant summary judgment on liability because WSDOT acknowledged the estimated surface area to be painted in the contract was an

9

inaccurate representation and the equitable adjustment was an incorrect calculation of surface area. OGJV argued the "only issue left for trial should be what additional surface area has not been calculated (knowing that WSDOT's CAD[6] calculation omitted significant portions of steel), and the amount of OGJV's damages."

On September 12, OGJV filed its response to the WSDOT motion for summary judgment. OGJV states the motion for partial summary judgment on liability is incorporated by reference. OGJV argued there were material issues of fact "relating to WSDOT's legal position." OGJV asserted the WSDOT contract incorporates by reference the PDCA industry standard "to determine a fair approximation of the surface area of steel" to be painted. Alternatively, OGJV submitted an expert declaration to argue the court should use the " 'ordinary' and 'popular' " meaning of "surface area" and industry standards. Pennsylvania professional engineer Michael Reina states the PDCA guidelines refer to "two practices involving standards of measurement":

- Closely fabricated items, such as chain link fence, open web joists, and grating should be measured as being solid.

- When a small opening interrupts a continuous surface, the opening is disregarded and considered part of the continuous surface. All single openings 100 square feet or larger are deducted.

  From the first practice above it is clear the openings should be treated as being solid, and the second practice gives an indication of the size of openings that should be treated as solid.

Reina states that "[f]or built-up members with lattice bars or perforated plates, the openings are disregarded and the area is calculated as being solid."

---

6 Computer aided design.

In reply, WSDOT argued OGJV waived the right to challenge the WSDOT recalculation of the square footage. WSDOT asserted the certified claim addressed only additional compensation based on a calculation that included voids.

The court granted WSDOT's motion for summary judgment. The court ruled the contract does not incorporate industry standards and the plain and unambiguous language "surface area of structural steel to be painted" does not include voids. The court ruled OGJV waived the right to assert breach of contract claims based on the WSDOT recalculation of the surface area because OGJV did not comply with the mandatory contract claim requirements.

> [WSDOT] has asserted that the entire case has been about voids and whether or not the surface area to be painted included the voids. To allow the plaintiff at this time to change the basis of their claim when they did not comply with the specific requirements under the contract for doing so is not appropriate; additionally, the contract itself does not allow for that.

The court dismissed the lawsuit with prejudice. The order granting the motion for summary judgment explicitly states that "[i]n ruling on WSDOT's motion for summary judgment, the Court did not consider the separate motion for partial summary judgment filed by" OGJV. The court entered a judgment against OGJV for attorney fees, paralegal fees, expert fees, and costs in the amount of $374,689.04. OGJV appeals.

Standard of Review

OGJV contends the court erred in dismissing the breach of contract claims on summary judgment.[7] We review an order of summary judgment dismissal de novo and

---

[7] OGJV also contends the court erred by not considering its motion for summary judgment on liability. But the record establishes OGJV noted the motion to be heard after the scheduled hearing on WSDOT's motion for summary judgment and as noted, although OGJV incorporated the motion in its response, the court expressly did not address the motion. OGJV does not appeal summary judgment dismissal of the quantum meruit claim.

engage in the same inquiry as the trial court. <u>Kofmehl v. Baseline Lake, LLC</u>, 177 Wn.2d 584, 594, 305 P.3d 230 (2013). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); <u>Kofmehl</u>, 177 Wn.2d at 594. We consider all facts and make all reasonable factual inferences in the light most favorable to the nonmoving party. <u>Young v. Key Pharms., Inc.</u>, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). But "if reasonable minds could reach only one conclusion from the evidence presented," summary judgment should be granted. <u>Estate of Becker v. Avco Corp.</u>, 187 Wn.2d 615, 621, 387 P.3d 1066 (2017); <u>Allen v. State</u>, 118 Wn.2d 753, 760, 826 P.2d 200 (1992).

Incorporation by Reference

OGJV asserts the PDCA industry standard that includes voids in calculating the surface area to be painted is incorporated by reference in the WSDOT contract. WSDOT contends the Special Provisions govern and the plain and unambiguous language of the Special Provisions defines the "surface area" to be painted as the "structural steel" of the bridge. We conclude the Special Provisions govern and the PDCA Estimating Guide is not clearly and unequivocally incorporated into the WSDOT contract.

WSDOT argues the Standard Specifications do not incorporate by reference the PDCA Estimating Guide. The Special Provisions for the project expressly "supersede any conflicting provisions of the 2010 Standard Specifications for Road, Bridge and Municipal Construction." Section 1-04.2 of the Standard Specifications states:

**1-04.2   Coordination of Contract Documents, Plans, Special Provisions, Specifications, and Addenda**
. . . .

Any inconsistency in the parts of the Contract shall be resolved by following this order of precedence (e.g., 1 presiding over 2, 3, 4, 5, 6, and 7; 2 presiding over 3, 4, 5, 6, and 7; and so forth):
1. Addenda,
2. Proposal Form,
3. Special Provisions,
4. Contract Plans,
5. Amendments to the Standard Specifications,
6. Standard Specifications, and
7. Standard Plans.[8]

Where "the parties to a contract clearly and unequivocally incorporate by reference into their contract some other document, that document becomes part of their contract." Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 801, 225 P.3d 213 (2009). It must be clear that the parties knew of and assented to the incorporated terms. W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc., 102 Wn. App. 488, 494-95, 7 P.3d 861 (2000).

Incorporation by reference allows the parties to "incorporate contractual terms by reference to a separate . . . agreement to which they are not parties, and including a separate document which is unsigned." "But incorporation by reference is ineffective to accomplish its intended purpose where the provisions to which reference is made do not have a reasonably clear and ascertainable meaning." Incorporation by reference must be clear and unequivocal. "[I]t must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms[.]"

Seventh Day Adventists, 102 Wn. App. at 494-95[9] (quoting 11 SAMUEL WILLISTON, THE LAW OF CONTRACTS § 30:25, at 233-34 (Richard A. Lord ed., 4th ed. 1999)); see also Northrop Grumman Information Tech., Inc. v. United States, 535 F.3d 1339, 1344 (Fed. Cir. 2008) ("[T]he incorporating contract must use language that is express and clear, so as to leave no ambiguity about the identity of the document being referenced, nor any reasonable doubt about the fact that the referenced document is being incorporated into

---

[8] Emphasis added.
[9] Alterations in original; citations omitted.

13

the contract.")[10]. "The burden of proving incorporation by reference lies upon the party claiming it." Baarslag v. Hawkins, 12 Wn. App. 756, 760, 531 P.2d 1283 (1975). The provisions referenced must have a reasonably clear and ascertainable meaning. Seventh-Day Adventists, 102 Wn. App. at 494.

The Standard Specifications incorporate the definitions used in the Society for Protective Coatings (SSPC) "Steel Structures Painting Manual," including Technology Update No. 9, which recognizes the PDCA as an authority to measure surfaces to be painted to include voids.

OGJV argues the PDCA standards are incorporated by reference into the WSDOT contract. The PDCA "Industry Standards" includes a list of definitions used in the Estimating Guide, including the definition of "surface area" as "[t]he measurement of the area of surface to be finished determined in accordance with the methods, procedures and standards as defined by the PDCA Standard P10." PDCA Standard P10 refers to several standards. OGJV relied on section 5.7. PDCA Standard P10 section 5.7 states:

> Closely fabricated items, such as chain-link fence, open web joists and grating, should be measured as being solid. If both sides of a closely fabricated item are finished, double the surface area. When a closely fabricated item is attached to framework, measure the framework separately as described in 5.2.[11]

---

[10] Emphasis in original.

[11] WSDOT notes OGJV ignores the PDCA standard that specifically applies to "structural steel" and does not define "surface area" as solid and the standard for "closely fabricated items" that treats surface area as solid. PDCA Standard P10 section 5.2 states:

> Pipes, rods, structural steel, lumber and other items to be finished whose circumference or perimeter is less than one foot is measured as one foot, otherwise the actual measurement is used.

(Emphasis added.)

Standard Specifications section 6-07, "Painting," describes the bridge painting work as containment, surface preparation, and furnishing and applying paint. The Standard Specifications incorporate by reference the SSPC Steel Structures Painting Manual. Standard Specifications section 6-07.1 states, "Terminology used herein is in accordance with the definitions used in Volume 2, Systems and Specifications, of the SSPC Steel Structures Painting Manual." The portions of Volume 2 of the SSPC manual designated as part of the record do not define "surface area of structural steel to be painted." But the "Definitions" section of the SSPC Steel Structures Painting Manual refers to technology updates:

> **Technology Update:** A consensus SSPC document prepared by a committee that describes and assesses a new material, procedure, concept, method, or other area of technology. Technology Updates are considered "fast track" documents and skip some steps in the standards approval process. A Technology Update is not suitable for referencing in a specification or procurement document because it does not contain mandatory language, although information from a Technology Update may be extracted and referenced in a contract. It differs from a technical article in a journal in that it represents a consensus of balanced interests, not a single author's viewpoint.

OGJV relies on Technology Update No. 9 to argue the PDCA definition of "surface area" is incorporated by reference into the WSDOT contract. Technology Update No. 9 provides information on costs for protective coatings projects and includes models and guidelines to estimate and analyze the cost for protective coatings projects. Technology Update No. 9 does not define "surface area." The update provides information about different methods for estimating costs for protective coatings projects. Section 6 of Technology Update No. 9, "Models and Data Sources," refers to the PDCA Estimating Guide. Technology Update No. 9 cites the PDCA for "guidelines on

measuring surfaces to be painted," including charts to determine surface areas for standard structural steel shapes.

### 6. Models and Data Sources

6.1 SOURCES OF APPLICATION/INSTALLATION COST DATA: Over the last several years, various government and private groups have developed models to estimate and analyze the cost for protective coatings projects. This section summarizes the major features of several of these efforts. Several of these models are derived from common practices and data sources.

. . . .

6.1.2 PDCA Estimating Guide: This text provides guidelines on measuring surfaces to be painted and in estimating production rates in square feet per hour for various industrial protective coatings activities. Rates are given for application of one, two or three coats to pipe, duct work, light, medium and heavy structural steel, hangers, fasteners, exterior shells and roofs of tanks and spheres, and machinery and equipment. Production rates are also given for surface preparation for four degrees of abrasive blast cleaning, hand scraping and wire brushing, power tool cleaning, pressure washing, steam cleaning, and water blasting. Charts are provided for determining surface areas for cylindrical tanks and standard structural steel shapes.

But the SSPC Steel Structures Painting Manual unequivocally states Technology Update No. 9 is "not suitable for referencing in a specification or procurement document." Technology Update No. 9 also states, "This technology update is for information purposes only. It is neither a standard nor a recommended practice." The contract does not incorporate by reference the SSPC manual and Technology Update No. 9's reference to the PDCA Estimating Guide. We conclude the WSDOT contract does not incorporate the PDCA definition or methodology to determine the surface area of structural steel to be painted.

Extrinsic Evidence

For the first time on appeal, OGJV contends because the language of the contract is ambiguous, the trial court erred in not considering the PDCA Estimating Guide as extrinsic evidence to determine the intent of the parties and the industry standard for calculating "surface area."[12] OGJV did not make this argument below. On review of an order of summary judgment, we "will consider only evidence and issues called to the attention of the trial court." RAP 9.12. OGJV did not argue that the contract language was ambiguous. OGJV claimed the contract incorporated by reference the PDCA guidelines defining "surface area." In the alternative, OGJV argued the court should use the ordinary meaning of "surface area" and there were material issues of fact as to industry standards.

Waiver

OGJV contends the court erred in concluding the only claim OGJV asserted was whether the definition of "surface area" included voids and OGJV waived its breach of contract claims based on the WSDOT miscalculation of the surface area to be painted. OGJV contends the formal claim asserted that "even accepting WSDOT's method of calculating surface area, WSDOT's calculation 'contains omission and summation errors' " and the change order does not accurately reflect the amount owed.

Preliminarily, OGJV asserts WSDOT raised this argument for the first time in its reply brief. We agree. The moving party in its motion for summary judgment must raise

---

[12] We note extrinsic evidence is to be used only to "illuminate what was written, not what was intended to be written." Hollis v. Garwall, Inc., 137 Wn.2d 683, 697, 974 P.2d 836 (1999). Extrinsic evidence is not admissible to show "a party's unilateral or subjective intent as to the meaning of a contract word or term"; to show an intent "independent of the instrument"; or to "vary, contradict or modify the written word." Hollis, 137 Wn.2d at 695. Where contractual language is unambiguous, we will not read ambiguity into the contract. Jacoby v. Grays Harbor Chair & Mfg. Co., 77 Wn.2d 911, 917, 468 P.2d 666 (1970).

"all of the issues on which it believes it is entitled to summary judgment." White v. Kent Med. Ctr., Inc., P.S., 61 Wn. App. 163, 168, 810 P.2d 4 (1991). "Allowing the moving party to raise new issues in its rebuttal materials is improper because the nonmoving party has no opportunity to respond." White, 61 Wn. App. at 168. The moving party cannot prevail on the original motion based on issues first raised in rebuttal materials. White, 61 Wn. App. at 168-69.

In any event, we conclude the court erred in dismissing the breach of contract claims for additional compensation using the WSDOT methodology for calculating the surface area of the structural steel to be painted and the amount owed.

The WSDOT contract requires OGJV to file a claim in writing after all contractual means to resolve a dispute for additional payment have been exhausted. Standard Specifications section 1-09.11(2) states the claim must include specific details, including a factual statement, the specific provisions of the contract supporting the claim, and "sufficient detail to enable the Engineer to ascertain the basis and amount of the claim." Section 1-09.11(2) states, "The Contractor agrees to waive any claim for additional payment . . . if a claim is not filed as provided in this section."

Washington law requires contractors to follow contractual notice provisions unless waived. Mike M. Johnson, Inc. v. Spokane County, 150 Wn.2d 375, 386, 78 P.3d 161 (2003); Absher Constr. Co. v. Kent Sch. Dist. No. 415, 77 Wn. App. 137, 142, 890 P.2d 1071 (1995). "A party to a contract may waive a contract provision, which is meant for its benefit, and may imply waiver through its conduct." Mike M. Johnson, 150 Wn.2d at 375. Waiver by conduct " 'requires unequivocal acts of conduct evidencing an

intent to waive.' " Mike M. Johnson, 150 Wn.2d at 386 (quoting Absher, 77 Wn. App. at 143).

Viewing the facts in the light most favorable to OGJV, the record shows that OGJV did not waive the right to claim additional compensation for omissions and errors in the WSDOT calculation. Contrary to the assertion of WSDOT, the record shows that without regard to inclusion of voids and using the WSDOT methodology, OGJV asserted the WSDOT calculation of the surface area of structural steel to be painted contained significant errors and omissions and the change order did not accurately reflect the amount owed.

On October 21, 2013, OGJV asked WSDOT to equitably adjust the contract. On May 2, 2014, WSDOT admitted there was a 12 percent discrepancy between the actual square footage and the estimate in the contract but denied the request. The May 2 letter states:

> WSDOT has completed our in depth evaluation of the surface area of structural steel painted on Contract 7895, by generating a set of CAD drawings that was then used to determine the surface area. Based upon this evaluation, there was a 12% discrepancy with the number supplied to the Contractor as a guide in the special provisions.
>
> We consider this to be within the threshold of approximation, based on the contract language, and do not agree with any claims for additional compensation. In accordance with Standard Specification Section 1-04.5, this protest is deemed invalid.

OGJV requested additional information about the WSDOT calculations. On May 21, 2014, WSDOT provided OGJV a summary spreadsheet of surface area calculations. On May 29, OGJV again requested additional information:

> b.  As stated in your email, the WSDOT Excel file/spreadsheet we received only contained a single Summary Sheet/Tab and OGJV is therefore unable to utilize this information alone to prepare for

further effective discussions with WSDOT. OGJV requests the subsequent detail Tabs/Sheets of the WSDOT Excel Workbook be provided to us for review.

c.     During our telephone conversation, you stated that the take-off information was hundreds of pages and would be too large to email (also confirmed in your email). The link included in your email connecting us to your take-off data was only 7MB[13] and contained only 143 pages of <u>new drawings</u> recently drafted by WSDOT. Please provide the additional take-off detail calculations referred to that were not included with this link. Alternatively, please confirm to us that WSDOT has no further pertinent information.[14]

WSDOT claimed, "The sheets summarize the totals. For example, the portals are summarized on page 37 and then the sheets that follow that are the takeoffs for each portal. . . . I don't believe there are any more sheets than these." Nonetheless, a WSDOT employee agreed to "check with HQ[15] Bridge on whether there are further spreadsheets to share, such as how the summaries from the drawings were grouped on the excel spreadsheet."

On June 24, 2014, OGJV submitted a protest letter in accord with section 1-04.5 of the contract. OGJV disputed the exclusion of voids. OGJV also disputed the initial calculation of surface area in the bid documents and the WSDOT recent recalculation and change order. OGJV asserted the published bid documents understated the surface area calculation. "[P]rior to bid WSDOT had estimated the approximate bridge surface area to be painted as 1,177,022 SF." OGJV stated:

It seems the [WS]DOT simply tallied the sums of the parts of their original take-off incorrectly in the published bid documents.

. . . .

---

[13] Megabytes.

[14] Emphasis in original.

[15] Headquarters.

> . . . . . . [W]e find WSDOT's latest calculations seem to be missing members and portions of members, which would accumulate to a significant quantity of area. . . .
>
> . . . Notwithstanding our rejection of WSDOT's methodology outlined in the above notes, from the summary spreadsheet and PDF[16] drawings provided to us by WSDOT via email on 5/21/14, there also is not enough information to perform a complete and reliable review of WSDOT's latest surface area calculations for any member of the bridge.

OGJV states that despite repeated requests, WSDOT did not provide additional information about the recalculation.

On April 2, 2015, OGJV filed a formal statement of claim in compliance with section 1-09.11(2). OGJV claimed the contract underrepresented the surface area and sought additional compensation. OGJV asserted surface area to be painted included voids. Further, without regard to the inclusion of voids, OGJV challenged the accuracy of the contract bid estimate:

> It is clear that WSDOT had multiple surface area quantities in their Pre-Bid Takeoff, and they chose to provide the lowest value to OGJV and other bidders.
>
> . . . .
>
> • The WSDOT Pre-Bid Takeoff, which was later provided to OGJV upon request, omitted many bridge members and contained arbitrarily assigned perimeters for built-up members without any defined basis.
> • Within the same excel file containing WSDOT's Pre-Bid Takeoff, we discovered multiple estimates of the main truss members. In their summary sheet, WSDOT ignored the surface area calculated on the sheet labeled "Main Truss" and instead used substantially lower values from 4 other worksheets.

OGJV also challenged WSDOT's recalculation of the surface area. OGJV asserted, "WSDOT's recalculation also contains omission and summation errors, the extent of which cannot be determined due to the lack of information provided by

---

16 Portable document format.

WSDOT." OGJV claimed that Change Order 8 did not equitably compensate OGJV. OGJV asserted it was compensated 10.1 percent for lump sum item 3, cleaning and painting; and only 1.0 percent for lump sum item 7, containment of abrasives. OGJV contended lump sum item 7 was not increased proportionally to account for the 10.7 percent increase in surface area, contrary to how OGJV and WSDOT estimated the cost of the lump sum item. OGJV provided calculations for an adjustment based on the inclusion of voids but did not provide a calculation using the WSDOT methodology.

Viewing the evidence in the light most favorable to OGJV, the record shows OGJV requested additional information about the WSDOT calculation of the surface area, stating it could not estimate the cost of these errors and omissions without the requested information. Here, as in Weber Construction, Inc. v. Spokane County, 124 Wn. App. 29, 98 P.3d 60 (2004), WSDOT waived strict compliance with the notice requirements.

In Weber, the County argued the contractor did not comply with the mandatory contractual notice provisions because the standard specifications required " '[t]he estimated dollar cost, if any, of the protested work and how that estimate was determined.' " Weber, 124 Wn. App. at 31, 34.[17] The County did not provide the requested information so the contractor "could not have stated in good faith how any such estimate was determined." Weber, 124 Wn. App. at 34. We held the County waived strict compliance with the notice requirement through its conduct. Weber, 124 Wn. App. at 35.

> The County knew that [the contractor] was required to provide a dollar cost estimate. It knew [the contractor] was aware of this requirement and was attempting to meet it. [The contractor] requested

---

[17] Alteration in original.

needed information in order to provide that estimate, but the County failed to give it . . . . [The contractor] offered substantial evidence that the County, by its conduct, waived strict compliance with the contract terms.

Weber, 124 Wn. App. at 35; see also Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 11-12, 277 P.3d 679 (2012) (where a contractor makes a "good faith effort" to comply with the notice provisions of the standard specifications, the contractor is not barred from seeking judicial relief). The court erred in dismissing OGJV's breach of contract claims alleging WSDOT erred in calculating the square foot surface area of structural steel to be painted.[18]

We affirm summary judgment dismissal of the claim that the WSDOT contract incorporates by reference PDCA industry standards for calculating the surface area of structural steel to be painted. We reverse dismissal of the breach of contract claims alleging that using the WSDOT methodology and without regard to voids, the WSDOT calculation of the square foot surface area of structural steel to be painted contained errors and omissions. We affirm in part and reverse in part the order on summary judgment, reverse the award of fees and costs, and remand.

WE CONCUR:

---

[18] We decline to address OGJV's motion for partial summary judgment because the record establishes the court did not rule on the motion. On remand, OGJV can renote the motion.