FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE SEP 2 7 2018
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on 9/27/18

_____, Deputy
for SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| NOVA CONTRACTING, INC., a Washington Corporation, | No. 94711-2 |
| Respondent, | |
| v. | EN BANC |
| CITY OF OLYMPIA, a Washington Municipal Corporation, | |
| Petitioner. | Filed **SEP 2 7 2018** |

GORDON McCLOUD, J.—The city of Olympia (City) contracted with NOVA Contracting Inc. to replace a deteriorating culvert. Their contract contained a "notice of protest" provision, standard specification section 1-04.5 (Section 1-04.5), taken from the Washington State Department of Transportation's *Standard Specifications for Road, Bridge, and Municipal Construction* (2012), www.wsdot.wa.gov/publications/manuals/fulltext/M41-10/ss2012.pdf [https://perma.cc./77X9-Z593]. *See* Clerk's Papers (CP) at 90-91. Section 1-04.5 required NOVA to "give a signed written notice of protest" "[i]mmediately" if

NOVA "disagree[d] with anything required in a change order, another written order, or an oral order from the [City] Engineer, including any direction, instruction, interpretation, or determination by the Engineer." *Id.* at 90. NOVA later sued the City for breach of the implied covenant of good faith and fair dealing. The City moved to dismiss NOVA's claim, arguing (in part) that NOVA's failure to file a written notice protesting the "written order[s]" on which the claim of breach was based violated Section 1-04.5 and hence barred NOVA's claim.

The trial court dismissed NOVA's claim, but the Court of Appeals reversed in part. *NOVA Contracting, Inc. v. City of Olympia*, No. 48644-0-II, slip op. at 1-2 (Wash. Ct. App. Apr. 18, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2048644-0-II%20Unpublished%20 Opinion.pdf, *review granted*, 189 Wn.2d 1038, 413 P.3d 565 (2017). This court has twice held that such written notice is mandatory and that actual notice does not suffice. *Mike M. Johnson, Inc. v. Spokane County*, 150 Wn.2d 375, 377, 391, 78 P.3d 161 (2003); *Am. Safety Cas. Ins. Co. v. City of Olympia*, 162 Wn.2d 762, 773, 174 P.3d 54 (2007). The Court of Appeals interpreted those holdings, however, as applying only to claims for cost of work performed, not to claims for expectancy and consequential damages. *NOVA Contracting*, slip op. at 6 n.3. We hold that *Mike M.*

*Johnson* applies even to claims for expectancy and consequential damages. We therefore reverse the Court of Appeals' decision as it relates to Section 1-04.5.

FACTUAL HISTORY

In early 2013, the City began soliciting bids to fix a deteriorating cement culvert along Woodland Creek in Olympia, Washington. Because the culvert was located next to a wetland, the City wanted to minimize land disturbance. Thus, rather than seeking bids to excavate the land to remove the cement pipe, the City sought bids to use the "pipe bursting" method. That method "consist[s] of bursting the existing pipe while simultaneously installing [the] new steel pipe, driven forward from the back using a percussive hammer and guided forward from the front using a winch cable." CP at 72. After two failed bidding periods, *id.* at 274, the City eventually awarded the contract to NOVA in May 2014, *id.* at 70.

The City provided designs for the project but left decisions regarding project implementation—such as the fill material for sand bags and the designation of access routes—to NOVA. The contract expressly stated that some of those implementation plans "must be submitted . . . prior to construction." *Id.* at 81-82. The contract also required compliance with a Department of Ecology (DOE) hydraulic project approval permit conditioned on "[e]rosion control measures . . . be[ing] in place prior to any clearing, grading, or construction." *Id.* at 466. The City interpreted

3

these contractual and permit conditions as requiring city approval of all implementation plans—which the parties refer to as "submittals"—before on-site construction began. NOVA disputes whether preapproval of all submittals was actually required under the contract.

Nevertheless, by early August 2014, NOVA had submitted implementation plans for at least 12 different aspects of the project. *Id.* at 499-502. The City rejected many of them and asked NOVA to revise and resubmit. NOVA did, but never to the City's satisfaction.

On August 7, before the City finished reviewing NOVA's first batch[1] of revised submittals, the City informed NOVA that seven "key" plans still needed city approval "before work related to these submittals can begin on site." CP at 77. Those plans related to (1) access and haul routes, (2) temporary bypass pumping, (3) temporary work area excavation, (4) work description, (5) steel pipe specifications, (6) pipe sealing, and (7) habitat boundary fencing. *Id.* Additionally, the City asked NOVA for a revised project schedule detailing how NOVA intended to make up for the delays due to outstanding submittals. *Id.* The City also asked NOVA to submit a "Request to Sublet Work" form confirming that NOVA's subcontractor, rather

---

[1] NOVA did not actually send its submittals in batches, but we group them that way for ease of reference. The exact dates of each submittal is not critical to our analysis.

than NOVA, would perform the pipe bursting portion of the construction project. *Id.*

The City issued a "notice to proceed" letter a few days later, on August 11, despite the missing plans, schedule, and sublet form. *Id.* at 79. The City likely issued the notice to proceed letter before the submittals were approved because of the tight timeline: the hydraulic project approval permit would expire on October 15, *id.* at 156; the contract gave NOVA 45 working days from issuance of the notice to proceed letter for project completion, *id.* at 79; so an August 11 notice to proceed letter gave NOVA until October 14 (the day before the DOE permit expired) to complete the project. *Id.* at 219. Both NOVA and the City agree that this left ample time to complete the project if NOVA could get past the submittal stage.

That did not happen. The City rejected NOVA's first batch of revised submittals the following week. The City again asked NOVA for a revised project schedule. *Id.* at 103.

NOVA did not submit a revised schedule or a sublet work form. Instead, NOVA defended the adequacy of its submittals and blamed the City's "rebarbative requirements" throughout the submittal process for the project's inertia. *Id.* at 103. NOVA acknowledged that its prior submittals did not include every detail that the City demanded but explained that such detail was unnecessary because "much of the

required information necessary in the submittals or plans [was] redundant or already specified by the contract specifications." *Id.* at 116. NOVA also argued that any perceived inadequacy in its submittals resulted from the City's design flaws. *Id.* NOVA suggested that the City was abusing the submittal process to clarify and correct the City's own design flaws and that those flaws should have been addressed through the change order process instead. Finally, NOVA complained that it was receiving mixed messages from city employees about what information the City needed in the submittals and asked the City to clarify the proper lines of communication for the contract. *Id.* at 116-17. But NOVA did not file a formal notice of protest regarding any of these matters. NOVA continued to believe, as of August 25, that there was still adequate time to complete the project by the October deadline. *Id.* at 117.

The City did not respond to NOVA's complaints about the submittal process.

After some back and forth with the City about the inadequacy of NOVA's submittals, NOVA submitted a second batch of revised submittals. The City rejected it. NOVA did not file a notice of protest at that time either.

Then, on September 4, the City issued a notice of default letter, demanding that NOVA cure its delinquent performance or risk termination of the contract. *Id.* at 156-58. The City identified four delinquencies: (1) failure to submit sufficient

information or acceptable submittals, (2) failure to mobilize to the work site, (3) failure to submit a revised project schedule, and (4) failure to present written documentation confirming TT Technologies Inc. (NOVA's subcontractor) would perform the pipe bursting. The City gave NOVA 15 days to cure these delinquencies but emphasized that "[w]ithout submittals that include specific and sufficient design and work details, the City cannot allow work to proceed." *Id.* at 157.

Upon receipt of the notice of default letter, NOVA submitted a third batch of revised submittals. It also provided the City with a revised project schedule. *Id.* at 286. But NOVA refused to provide the City with the requested written confirmation from its subcontractor about pipe bursting because the subcontractor had provided verbal confirmation several times. *Id.* at 297-99. Because the default notice listed failure to mobilize as a delinquency, NOVA also began moving equipment to the work site, even though it did not have keys to the jobsite. Although there were some earlier communications about giving NOVA access to the jobsite, the City never did so. *Id.* at 472-73. To gain that access, NOVA cut the padlock on the City's fence. NOVA then installed its own padlock and began implementing parts of the previously approved traffic control plan. *Id.* at 160.

The City ordered NOVA to stop work immediately and vacate the jobsite. *Id.* at 160, 166. The City did so because NOVA failed to obtain all the necessary

preconstruction submittal approvals. *Id.* at 164. Around that same time, the City also rejected NOVA's third batch of revised submittals. Again, NOVA did not formally protest those rejections.

NOVA did file a formal written protest on September 9 against the City's notice of default and stop work order. *Id.* at 171, 173. NOVA protested the City's stop work order, arguing that the order was inconsistent with the City's notice of default letter, which gave NOVA 15 days to cure its failure to mobilize to the work site. *Id.* at 160, 173. NOVA repeated its belief that the City was abusing the submittal process to alter and correct defects in the City's construction designs. *Id.* at 173.

On September 18, NOVA informed the City that it could no longer complete the project by the October deadline. *Id.* at 302-03. NOVA expressed its willingness to continue construction beyond that October deadline, but only if the City covered costs related to the delay. *See id.* at 306-14. The City declined that offer.

Instead, the City terminated the contract on September 24. It cited NOVA's failure to timely cure the deficiencies listed on the notice of default as the basis for termination. *Id.* at 215.

NOVA filed a formal written protest against the City's termination for default. *Id.* at 295-96. NOVA argued that its failure to perform was justified because the

City breached the contract by failing to give NOVA access to the jobsite after the notice to proceed letter issued back on August 11 and then ordering NOVA to stop work on September 9 without an opportunity to cure the failure to mobilize. *Id.* According to NOVA, those actions constitute a material breach of the City's contractual obligation to give NOVA access to the work site, act in good faith, and properly administer the contract. *Id.* at 295.

NOVA filed a claim for damages with the City on September 30. *Id.* at 295-96. The City denied NOVA's claim "'in its entirety.'" *Id.* at 5. This lawsuit followed.

PROCEDURAL HISTORY

After the City denied NOVA's claim, NOVA sued the City for breach of contract in Thurston County Superior Court. *Id.* at 3-8. NOVA's complaint identified five material breaches by the City: (1) the City's refusal "to allow NOVA to proceed," despite the fact that it had issued a notice to proceed letter, *id.* at 5, (2) the City's failure "to evaluate and approve submittals properly, rejecting proper submittals," *id.* at 6, (3) the City's "refusal to participate in ordinary project activities" when it "canceled numerous project meetings and refused to participate in on-site meetings," *id.*, (4) the City's "demands of NOVA to perform extra work and/or supply extra material but without the benefit to NOVA of proceeding as a

Change Order," *id.*, and (5) the City's "wrongful termination," *id.* at 7. The complaint also alleged that the City's failure to participate in project activities constituted a breach of the covenant of good faith and fair dealing. *Id.* at 6.

The City counterclaimed, alleging breach of contract and requesting liquidated damages. CP at 42-43.

After completing discovery, the City moved for summary judgment on NOVA's complaint and its own counterclaims. *Id.* at 49-66. The City argued that it properly terminated the contract for default because NOVA failed to complete the submittal process on time. The City also denied owing NOVA any money for part performance. The City argued that the little traffic control work that NOVA did when it trespassed onto the jobsite did not merit compensation because that work was defective and unauthorized. *Id.* at 65-66.

The City did not initially raise NOVA's failure to timely comply with notice of protest requirements in its motion for summary judgment. But the City did raise this issue in its reply. *Id.* at 439-40. That reply argued that because NOVA "did not provide a written protest of the City's rejection of its submittals as required by Section 1-04.5 of the Contract . . . [NOVA] 'completely waives any claims for protested Work.'" *Id.* at 440 (quoting Section 1-04.5). The City also argued this

ground for dismissal at the hearing on that motion. Verbatim Report of Proceedings (Feb. 19, 2016) (VRP) at 7, 23, 25.

NOVA opposed summary judgment. *Id.* at 228-44. It argued that disputed issues of material fact existed regarding which party breached first and whether that breach excused subsequent performance by the other party. *Id.* at 234. It never responded to the City's belated waiver argument, never opposed the City's ability to raise that argument, and never sought additional time to address that argument.

The trial court granted summary judgment in favor of the City on its cross claim for breach and awarded the City liquidated damages. The trial court also dismissed NOVA's claims for breach of contract. The trial court found that NOVA had failed to present evidence to "sufficiently raise[] an issue that there was a breach by the city in not accepting certain submissions" or "that there was some inappropriate or bad faith utilized by the city engineer [in rejecting NOVA's submittals]." VRP at 28-29. Thus, the trial court did not reach the City's alternative ground for dismissal, i.e., NOVA's failure to comply with Section 1-04.5's written notice of claim requirement.

NOVA successfully appealed. *NOVA Contracting,* slip op. at 20. The Court of Appeals held that there were material questions of fact about whether the City breached the implied covenant of good faith and fair dealing when it denied NOVA's

11

submittals. *Id.* at 1. That court rejected the City's argument that NOVA had waived all claims relating to the City's rejection of those submittals by failing to comply with Section 1-04.5's written notice of claim requirement. *Id.* at 6 n.3. The court explained that "[a]lthough NOVA may have waived claims for the cost of work performed under the contract, [S]ection 1-04.5 does not apply to expectancy and consequential damages." *Id.* It cited no authority for this holding. It then remanded to the trial court for further proceedings solely on NOVA's claim for breach of the covenant of good faith and fair dealing. *Id.* at 2. But in the event the jury agreed with the City, the Court of Appeals ruled, an award of liquidated damages was proper. The court affirmed dismissal of NOVA's other breach of contract claims.

The City petitioned this court for review of the Section 1-04.5 notice of protest issue. NOVA did not seek review of any ruling, including the dismissal of its other breach of contract claims or the enforceability of the contract's liquidated damages clause. Thus, the only issue before us is whether Section 1-04.5 bars NOVA's claim for breach of the covenant of good faith and fair dealing. We hold that it does. We therefore reverse the Court of Appeals in part.

STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo, taking all facts and inferences in the light most favorable to the nonmoving party. *Keck v. Collins,*

184 Wn.2d 358, 370, 357 P.3d 1080 (2015) (citing *Folsom v. Burger King*, 135 Wn.2d 658, 663, 958 P.2d 301 (1998)).

ANALYSIS

Section 1-04.5 ("Procedure and Protest by the Contractor") provides that if the contractor

> disagree[s] with anything required in a change order, another written order, or an oral order from the [City] Engineer, including any direction, instruction, interpretation, or determination by the Engineer, the Contractor *shall*:
>
> . . . *Immediately* give a signed written notice of protest to the Project Engineer or the Project Engineer's field Inspectors before doing the Work;
>
> . . . [and] Supplement the written protest within 14 calendar days with a written statement and supporting documents.

(Emphasis added.) "By not protesting . . . , the Contractor . . . *waives any additional entitlement and accepts from the Engineer any written or oral order* (including directions, instructions, interpretations, and determinations)." Section 1-04.5 (emphasis added). Additionally, the contractor's failure to comply with the protest procedures of Section 1-04.5 "*completely waives any claims for protested Work*." *Id.* (emphasis added).

We have repeatedly upheld such notice of protest provisions. *Mike M. Johnson*, 150 Wn.2d at 391; *Am. Safety*, 162 Wn.2d at 773. Relying on those cited

cases, the City argued that NOVA's claim should be dismissed because NOVA failed to protest each rejected submittal "[i]mmediately," as Section 1-04.5 requires.

The Court of Appeals disagreed, reasoning that "[a]lthough NOVA may have waived claims for the cost of work performed under the contract, [S]ection 1-04.5 does not apply to expectancy and consequential damages." *NOVA Contracting*, slip op. at 6 n.3. We disagree.

I.  There Is No Exception to Section 1-04.5's Written Requirement for Consequential or Expectancy Damages

Section 1-04.5 states, "By failing to follow the procedures of Sections 1-04.5 and 1-09.11, the Contractor completely waives *any claims for protested Work.*" CP at 90 (emphasis added). "The word 'any' is a broad and inclusive term with respect to subject matter." *S.L. Rowland Constr. Co. v. Beall Pipe & Tank Corp.*, 14 Wn. App. 297, 306, 540 P.2d 912 (1975) (citing *Rosenoff v. Cross*, 95 Wash. 525, 528, 164 P. 236 (1917); *State ex rel. Evans v. Bhd. of Friends*, 41 Wn.2d 133, 145, 247 P.2d 787 (1952)). Thus, "'Washington courts have repeatedly construed the word "any" to mean "every" and "all."'" *LK Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 48, 82 n.18, 331 P.3d 1147 (2014) (quoting *State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991)). The term "any claims" therefore plainly means "all" claims related to the "protested Work," including claims for expectancy and consequential damages that are based on protested work. Thus, there is no exception

14

to Section 1-04.5's written notice of claim requirements for expectancy and consequential damages.

II. We Do Not Address the Availability of Equitable Exceptions to Section 1-04.5's Written Notice of Claim Requirement Because NOVA Raised a Claim for Breach of the Covenant of Good Faith and Fair Dealing—and That Claim Sounds in Contract, Not Equity

NOVA argues that Section 1-04.5 does not apply to a claim for breach of the covenant of good faith and fair dealing because such a claim sounds in equity. Wash. Supreme Court oral argument, *NOVA Contracting, Inc. v. City of Olympia*, No. 94711-2 (May 17, 2018), at 22 min., 59 sec. through 32 min., 9 sec. (discussing *Bignold v. King County*, 65 Wn.2d 817, 399 P.2d 611 (1965), and *Gen. Constr. Co. v. Pub. Util. Dist. No. 2 of Grant County*, 195 Wn. App. 698, 380 P.3d 636 (2016) (published in part)), *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

We disagree. A claim of breach of the covenant of good faith and fair dealing sounds in contract, not equity. *Rekhter v. Dep't of Social & Health Servs.*, 180 Wn.2d 102, 113-16, 323 P.3d 1036 (2014) (plurality opinion) (describing the duty of good faith and fair dealing as a "contractual duty around a contractual term"); *id.* at 127 (C. Johnson, J., concurring in part). Thus, even if there is an equity exception to *Mike M. Johnson*'s rule of strict compliance with Section 1-04.5 that would not save NOVA's claim.

15

III.   NOVA Failed To Comply with Section 1-04.5's Written Notice of Claim Requirements

NOVA next claims that it was not required to file a written protest after each rejected submittal because it filed a claim for breach of the covenant of good faith and fair dealing.   NOVA's complaint states that that claim is based on the City's "refusal to participate in ordinary project activities" when the City "canceled numerous project meetings and refused to participate in on-site meetings." CP at 6. NOVA's trial court briefs also speculated that because its last city project resulted in costly design changes, some city employees wanted a different contractor for the culvert job.   CP at 278.   But NOVA later clarified in its supplemental brief and during oral argument before this court that that claim is based solely on the City's unreasonable rejection of its submittals and explained that the complaint referred to meetings and canceled meetings only because "the submittals were discussed and handled in those meetings."   Suppl. Br. of Resp't NOVA at 14; Wash. Supreme Court oral argument, *supra*, at 17 min., 21 sec. through 19 min., 16 sec.   NOVA also withdrew any claim that the City sabotaged NOVA's performance in favor of awarding the contract to a different contractor.   Wash. Supreme Court oral argument, *supra*, at 19 min., 16 sec. through 20 min., 23 sec.

Because NOVA's claim for breach of the covenant of good faith and fair dealing is based entirely on the City's improper rejection of its submittals, and

because it is undisputed that NOVA did not file a written notice of protest immediately, NOVA "waive[d] any claims for protested Work." CP at 91.

NOVA argues that because the City possessed the authority to rescind its rejections up until the contract ended, NOVA's claim did not fully ripen until the City issued the stop work order, practically terminating the contract. Suppl. Br. of Resp't NOVA at 15.

NOVA's assertion that a protestable dispute does not materialize for purposes of Section 1-04.5 until after a contract ends, when the City can no longer reverse its decision, is inconsistent with the contractor's obligation under Section 1-04.5 to continue contract performance pending resolution of the protest. Section 1-04.5 states that "[i]n spite of any protest or dispute, the Contractor shall proceed promptly with the Work as the [City] Engineer orders." (Underlining omitted.)

IV.   The Issue of Noncompliance with Section 1-04.5 Was Briefed and Argued at the Trial Court and Court of Appeals and Is Therefore Properly before Us

Finally, NOVA argues that we should not consider the Section 1-04.5 issue because the City failed to properly raise it before the trial court. NOVA correctly observes that the issue of noncompliance with Section 1-04.5 was not raised in the City's motion for summary judgment and supporting memorandum. The City did, however, raise the issue in its reply. CP at 439-40. That reply argued that because

NOVA "did [not] provide written protest of the City's rejection of its submittals as required by Section 1-04.5 of the Contract . . . [NOVA] 'completely waives any claims for protested Work.'" *Id.* (quoting Section 1-04.5). NOVA did not object to the City's ability to raise that ground in a reply and did not seek additional time to respond.

The City then raised Section 1-04.5 as a basis for granting summary judgment during the summary judgment hearing in the trial court. VRP at 7 (noting that "there was no previous claim by the contractor or notice given as required by the contract that the city's previous actions in rejecting those submittals were inappropriate"), 23 (arguing NOVA "waived any of the [City's] actions prior to September 4th" because "[t]he contract specifically states if you disagree with any decision by the engineer, you have to immediately protest that in writing, and if you don't protest it any related claims for compensation or extensions of time are waived"), 25 (asserting again that "the contract says you have to give notice, they didn't give notice . . . so we're entitled to judgment as a matter of law").

NOVA never objected to the City's ability to raise this argument on procedural timeliness or other grounds at the trial court. Instead, it responded on the merits. NOVA's counsel argued:

> The city is now arguing—I saw it basically, it may have been in the original brief, it was more highlighted in the reply—that we had a duty

to submit claims when we received the rejections of our submittals and when—by not doing so we've waived our argument that the submittals were wrongly rejected. That mistakes how this submittal process works. None of these rejections were final rejection, that is, none of [the] rejections said submittal rejected, don't bother resubmitting on this one, you're done. They all said reject for these reasons, resubmit to address the following issues. So we were in the middle of the process. The process wasn't done and the city cut the process short and we did file our claim timely and in the proper form from the moment the city stopped the process, but the city is now saying you should have filed your claim the moment you thought we were doing something wrong with the process rather than give us the benefit of the doubt and let the process play out. I guess that's what the city is saying. We're supposed to give them the benefit of the doubt, we're supposed to let the submittal process play out.

We were curing what the city said was wrong with the submittal process even though we thought the city's objections were not well taken, and the city stopped us from doing so. So we timely appealed this, there's no question, from the moment the city stopped the submittal process, we appealed. We filed a claim on the submittal process and from the moment the city stopped our performance on the job, we filed a claim for the city not letting us perform. So I think there's no question we're timely here.

*Id.* at 17-19. The trial court was therefore fully apprised of the Section 1-04.5 issue and the parties' arguments, though it rested its decision on other grounds.

The Court of Appeals was also fully apprised of the issue and the arguments. Section 1-04.5 was a central topic in the appellate briefs and the oral argument in that court. Br. of Resp't at 16, 37-38; Appellant's Reply Br. at 20-21; Wash. Court of Appeals oral argument, *NOVA Contracting, Inc. v. City of Olympia*, No. 48644-0-II (Jan. 26, 2017), at 9 min., 50 sec. through 10 min., 59 sec.; 12 min., 56 sec.

through 14 min., 0 sec.; 17 min., 42 sec. through 18 min, 4 sec.; 22 min. through 25 min., 1 sec.; 28 min., 24 sec. through 28 min., 55 sec.; 29 min., 51 sec. through 31 min., 11 sec., http://www.courts.wa.gov/appellate_trial_courts/appellateDockets.

And the Section 1-04.5 issue was the only issue on which this court granted review. An issue that is raised and argued below and accepted for review by this court is properly before us. *See* RAP 2.5, 13.6, 13.7.

V.    Appellate Attorney Fees

The City requests an award of appellate attorney fees pursuant to RCW 39.04.240. NOVA concedes that if the City prevails on the Section 1-04.5 issue, then the City is entitled to appellate attorney fees. Appellant's Reply Br. at 22-23. We therefore grant the City's request for appellate attorney fees.

CONCLUSION

We reverse in part. NOVA's claim for breach of the covenant of good faith and fair dealing is based entirely on the City's rejection of submittals. Section 1-04.5 requires the contractor to "[i]mmediately" file a written notice of protest to preserve any claims related to rejection of such submittals. NOVA did not "[i]mmediately" file such a written notice of protest following rejection of its submittals. Section 1-04.5 therefore bars NOVA's claim.

No. 94711-2

_Geo. McCoud, J._

WE CONCUR:

_Fairhurst, C.J._

_[signature]_

_Madsen, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Yu, J._

21