**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| CASCADE CIVIL CONSTRUCTION, LLC, a Washington limited liability company, | No. 84465-2-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| JACKSON DEAN CONSTRUCTION, INC., a Washington corporation; COSTCO WHOLESALE CORPORATION, a Washington corporation, | |
| Respondents, | |
| GREAT AMERICAN INSURANCE CO., | |
| Defendant. | |

BIRK, J. — Jackson Dean Construction Inc. was the prime contractor on a project to build a new corporate headquarters for Costco Wholesale Corporation in Issaquah, Washington. It subcontracted with Cascade Civil Construction LLC for excavation work. Cascade filed this action against Jackson Dean seeking, among other relief, compensation above the contract price for costs it says were the result of changes Jackson Dean required. The superior court dismissed the claims at issue on summary judgment on the ground Cascade failed to comply with contractual notice of claim provisions. Cascade asserts (1) the notice of claim requirements did not govern its request for additional compensation in these

circumstances, (2) if they did govern, it was entitled to a trial on whether its compliance was excused for impossibility, (3) it was entitled to a trial on whether Jackson Dean waived compliance, (4) it should have been permitted to amend its complaint to assert a claim under the cardinal change theory, and (5) the superior court should not have viewed Jackson Dean as a prevailing party for purposes of awarding reasonable attorney fees. We reject Cascade's contentions, affirm the superior court, and award Jackson Dean reasonable attorney fees on appeal.

Under the subcontract, Cascade agreed to perform earthwork and site utilities work for $2,871,023.00. Cascade asserts the original construction schedule called for dewatering to occur before it began excavation. The subcontract included an acknowledgement that a ground water drawdown would occur before the start of basement excavation:

> 17. Subcontractor acknowledges that per bidding documents and subcontract schedule the excavation of all foundations and basement will be completed in the winter wet period. Subcontractor also acknowledges that a dewatering effort for the existing ground water will be implemented and a period of drawdown will occur prior to start of the basement excavation. Jackson Dean Construction does not have control of or certify the conditions of the excavated material at time of haul off.

A handwritten interlineation to this paragraph added, "Materials excavated will be at the parameters as provided within the project Geotechnical Report." The geotechnical report indicated that aspects of the project would require construction dewatering, and it would be necessary to develop a construction dewatering plan.

Construction was set to begin in early 2020. Under the initial construction schedule, dewatering was to be complete by January 31, 2020, and Cascade was

to begin excavation on February 3, 2020. The project was delayed due to permitting and the COVID-19 pandemic. Construction resumed in April 2020. Jackson Dean's project engineer circulated an updated project schedule on April 22, 2020. Under the revised schedule, Cascade's excavation was to begin on May 18, 2020, with dewatering to be installed after Cascade began work.

Cascade asserts this schedule change "created a dramatically different set of work for Cascade." Cascade's general manager stated, "Excavation below the water table is materially different if dewatering is used properly than if it is not used properly. And for dewatering to be used properly, the well must be drilled and water pumped from the wells *before* the excavation begins so that the water table can be brought down and the soil dried." Cascade asserted that "by installing dewatering at the same time as excavation[,] Jackson Dean [created] a situation where more than one subcontractor would be required to work on different tasks in the same physical location," which also slowed its work.

To support its argument that it was not required to give notice of changes that Jackson Dean ordered, Cascade points to a series of communications in April and May 2020 it says show Jackson Dean directed the changes resulting from the new dewatering schedule. Cascade sent a letter, dated April 28, 2020, to Jackson Dean that listed "impacts we have addressed for the project's recent revised schedule dated 4/20/20." Cascade alerted Jackson Dean to a number of potential issues, stating, "We will notify [Jackson Dean] when [Cascade] has been directly delayed and impacted." Cascade's general manager testified Cascade "detailed" the "serious problems" caused by the change in the construction schedule in the

3

April 28, 2020 letter and a May 7, 2020 e-mail string. On May 7, 2020, Jackson Dean's general superintendent sent an e-mail requesting a meeting with Cascade's leadership. Jackson Dean expressed concerns about Cascade's communication, stating it believed Cascade's issues had been resolved after a meeting with subcontractors, but Cascade's project manager later sent a written notice as if no meeting had been held and no resolution reached. Cascade's general manager replied, "I disagree with your assessment," and promised to advise when Cascade's owners could meet.

According to Jackson Dean, the parties met on May 8, 2020. Jackson Dean's senior project manager testified, "Jackson Dean and Cascade discussed the schedule and sequencing issues, including the concern set forth in Cascade's April 28, 2020 letter. After the meeting Jackson Dean believed the issues had been addressed and was hopeful the parties were on track." Cascade provided declaration testimony—without specifying a meeting or a date, or attaching documentation—that "Cascade alerted Jackson Dean that the change would bring challenges and cost impacts, and Jackson Dean instructed Cascade to proceed with the work, adhering to its written change instructions."

In addition to the schedule change, Jackson Dean directed Cascade to make a deeper excavation under one of the buildings, pursuant to a design change from the project architect. A Jackson Dean representative testified in pretrial discovery the change was "substantial," and increased the amount of work that Cascade had to perform. Between July 8, 2020 and July 16, 2020, Cascade was included in an e-mail chain where Jackson Dean and another subcontractor

4

exchanged e-mails discussing the deeper excavation. Cascade did not participate in the discussion in those e-mails.

On July 17, 2020, Cascade sent a letter to Jackson Dean requesting change orders "for the additional scope of work for the months of April through July," stating that $503,233.17 was outstanding. On July 20, 2020, Cascade wrote to Jackson Dean expressing concerns resulting from delayed dewatering. Cascade stated conditions would reduce productivity and increase costs, and, concerning both already completed work and future work, listed various costs it associated with site conditions:

> [W]ith more truck volume and reduced effectiveness, more crew time is required at an increased cost of labor and equipment and supervision.
>
> . . . [W]e assess that 1/3 of the excavation was impacted, approximately 13,700 [cubic yards] which is 18,300 truck cubic yards. While we expected some wet materials, we did not expect a majority of wet materials based on the requirement to have the groundwater drawn down prior to starting the excavation. We estimate that the material in question had 15% more moisture tha[n] it would have had the dewatering system been effective. . . . The cost of trucking disposing of the additional 2,745 truck yards is $65,700. . . .
>
> The wet sloppy nature of the material affects the productivity of the work to cut, handle and load also. We estimate that the cost of this to be an additional . . . $64,200. This represents an additional 5 days of time to perform this work. This will also require additional sweeping for these added days 50 hours at $155/[hour] $7,750.
>
> Finally, we will be forced to use an excavator to cut to the subgrade elevation rather than [a] dozer as was expected and is conventional. . . . The increased cost is $15,400.

Cascade stated the extra costs totaled $282,375.00, and requested nine additional contract days.

In a statement of claim that Jackson Dean marked received on August 25, 2020, Cascade sought additional costs of $1,561,818.66 and 133 additional contract days for increased costs and expenses incurred from excavating at the same time the dewatering system was being installed and increased costs and expenses incurred in excavating before dewatering occurred. Cascade offered declaration testimony that it did not submit this claim because it believed there was a dispute, but as "back up documentation" supporting the additional costs. On September 23, 2020, Jackson Dean rejected the statement of claim "in its entirety," based among other reasons on the notice of claim provisions.

The parties contemporaneously discussed other changes and price adjustments. Cascade sent letters claiming additional costs associated with the deeper excavation. Jackson Dean repeatedly requested additional information, beginning December 2020 to at least as late as fall 2021 according to our record. Meanwhile, on May 21, 2021, Cascade recorded a claim of lien seeking compensation of $3,715,211.39 above the contract price.[1] Cascade later filed this action, seeking foreclosure of its lien and alleging Jackson Dean had failed to pay amounts owing "under the [subcontract] and various change orders." On May 3, 2022, the superior court granted Jackson Dean's motion for partial summary judgment regarding Cascade's failure to comply with the notice and claim procedures. The parties filed a notice of settlement, in which they agreed that "all claims asserted in this lawsuit have either been settled between the parties or

---

[1] The record indicates that an amended claim of lien in the amount of $4,185,494.56 was signed on January 20, 2022, but it is unclear if the amended claim of lien was recorded.

6

dismissed via" the partial summary judgment order. Cascade appeals the summary judgment order.

I

Cascade's first argument is that the notice of claim provisions were not triggered because, when Jackson Dean directed that Cascade perform different and additional work to excavate in damp soils and to a deeper level, Jackson Dean appreciated it was requesting more costly work. Cascade argues paragraph 4.1 of the subcontract permitted Jackson Dean to require different and additional work with associated price adjustments, but this event by itself did not trigger subsequent provisions in paragraph 4.2 covering any "dispute." Paragraph 4.1 addressed the event of Jackson Dean issuing a change order:

> 4.1 Change Orders. [Jackson Dean] may, without notice to [Cascade]'s surety, if any, and without invalidating this Subcontract, order in writing extra Work or make changes by altering, adding to or deducting from the work and the Subcontract Price and/or time shall be adjusted as mutually agreed. [Cascade] shall have no claims for additional payment for extras or changes unless the extra or changed Work, and any time extension requested in connection with the change, have been approved in writing by both [Jackson Dean] and [Cascade] prior to the extra or changed Work being performed. This provision shall be strictly enforced.

Cascade argues this paragraph controls the present dispute, not the separate notice provisions. Cascade reasons there is no need to require notice to Jackson Dean of changes it ordered. Cascade says this is in "stark contrast" to paragraph 4.2, which applies "[i]n case of any dispute":

> 4.2 Notice of Change or Claim. In case of any dispute regarding the existence of or the adjustment for any change to [Cascade]'s work, [Cascade] shall give [Jackson Dean] written notice of its intent to make claim whether for an extension of time or

7

adjustment in Subcontract Price. The notice shall describe with particularity and detail: (a) the occurrence(s) giving rise to [Cascade]'s claim; (b) the portion(s) of [Cascade]'s Work known to be affected, and the cost and time ramifications thereof, including all backup and information necessary for [Jackson Dean] to independently evaluate the claim. Such notice shall be given in writing within five (5) calendar days of the initial occurrence(s) upon which [Cascade]'s claim is based, or a shorter period if such period is set forth in the Main Contract. The giving and content of notices required by this Section shall be an absolute condition precedent to [Cascade]'s right to make any claim, whether against OWNER[ or Jackson Dean] and any failure shall waive and be a complete bar to any claim or other adjustment to this Subcontract.

Cascade argues this provision was not triggered when Jackson Dean changed the work and directed Cascade to proceed, because there was then no dispute.

To further support its argument, Cascade points to provisions it attributes to the prime contract between Jackson Dean and Costco. The prime contract is incorporated into the subcontract. According to Cascade, the prime contract provides for a "Construction Change Directive," which it defines as a "written order prepared by the Architect and signed by the Owner and Architect, directing a change in the Work prior to agreement on adjustment, if any, in the Contract Sum or Contract Time, or both."[2] For a construction change directive, the prime contract provides methods to adjust the contract price independent from the claim process described in paragraphs 4.2 and 5.2 of the subcontract. This indicates, Cascade says, the parties' intent that change orders may support price adjustments "per agreement," without resort to the notice provisions.

---

[2] Rather than the actual contract between Jackson Dean and Costco, Cascade appears to rely on provisions of the standard American Institute of Architects Document A201™, "General Conditions of the Contract for Construction" (2017). Jackson Dean does not challenge this document as setting forth the referenced terms of the prime contract.

Jackson Dean agrees it was allowed to order changes under paragraph 4.1, but it says that unless the parties agreed on a price adjustment, then under paragraph 4.2 Cascade was required to provide written notice of its intent to claim a price adjustment in compliance with the stated time and content requirements. In addition, Jackson Dean says there was a further notice requirement in paragraph 5.2 applicable in any situation in which Cascade sought additional compensation, together with a requirement in paragraph 5.3 that Cascade submit a statement of claim timely after giving notice under either paragraph 4.2 or 5.2. Paragraphs 5.2 and 5.3 spelled out these terms in additional detail, and made compliance an absolute condition precedent to any claim:

> 5.2 <u>Notice</u>. [Cascade] shall give [Jackson Dean] written notice of its intent to make claim whether for an extension of time or an adjustment in the Subcontract Price. The notice shall describe with particularity and detail: (a) the occurrence(s) giving rise to [Cascade's] claim; and (b) the portion(s) of [Cascade's] Work known to be affected and the cost and time ramifications thereof, including all backup and information necessary for [Jackson Dean] to independently evaluate the claim. Such notice shall be given in writing within five (5) calendar days of the occurrence(s) upon which [Cascade's] claim is based. In addition, within fifteen (15) calendar days of the initial occurrence(s) upon which [Cascade's] claim is based, Subcontract shall give [Jackson Dean] written notice of the recovery plan which [Cascade] believes will mitigate and/or eliminate the impact of the occurrence(s) on [Cascade's] Work. *The giving and content of the notices required by this Section shall be an absolute condition precedent to [Cascade's] right to make claim*, whether against OWNER or [Jackson Dean] and failure to strictly comply with the notice, content or timing requirements of this Section shall waive and be a complete bar to any claim or other adjustment to this Subcontract.

> 5.3 <u>Statement</u> <u>of</u> <u>Claim</u>. Prior to the time required by the Main Contract in the case of a [Cascade] claim against OWNER pursuant to Section 5.4 or no later than thirty (30) calendar days after providing notice pursuant to 4.2 or 5.2, [Cascade] shall provide [Jackson Dean]

with a further detailed Statement of its Claim(s) ("Statement"). . . . *Submission of this Statement containing all of the foregoing elements within the time periods set out in this section shall be an absolute condition precedent to [Cascade]'s right to prosecute any claim. If the Statement is not provided by [Cascade] in strict compliance with the content and time periods set out in this Section, [Cascade]'s Claim(s) shall be deemed to have been released, barred and otherwise waived.*

(Emphasis added.) Jackson Dean asserts that because Cascade did not comply with either the content or timing requirements of these paragraphs, its claims are barred.

The parties' dispute concerning the effect of the change order, notice of claim, and dispute provisions presents a question of contract interpretation. This is a question of law. Allstate Ins. Co. v. Neel, 25 Wn. App. 722, 724, 612 P.2d 6 (1980). When the only question relates to the effect of language in a written contract, the court may decide the question on summary judgment. Id. We review this issue de novo. Boyd v. Sunflower Props., LLC, 197 Wn. App. 137, 142, 389 P.3d 626 (2016). We agree with Jackson Dean that the notice provisions applied and Cascade's noncompliance bars its claims.

In general, Washington decisions enforce notice and claim procedures in construction contracts. Mike M. Johnson, Inc. v. County of Spokane, 150 Wn.2d 375, 388-89, 78 P.3d 161 (2003) (collecting cases). An owner's having actual notice of a changed condition in the work is not an exception to compliance with mandatory contractual protest and claim provisions. Id. at 387-88. The rule of Mike M. Johnson extends to claims for expectancy and consequential damages, beyond merely claims for payment for disputed work. NOVA Contracting, Inc. v. City of Olympia, 191 Wn.2d 854, 857, 426 P.3d 685 (2018). Cascade does not

10

take issue directly with <u>Mike M. Johnson</u>, but argues that this case involves a change order governed by paragraph 4.1 and a construction change directive within the meaning of the prime contract.

Nevertheless, Cascade does not demonstrate a contractual basis here for claiming compensation above the contract price. Cascade emphasizes that paragraph 4.1 allows for changes and then provides for corresponding price adjustments, but this is only "as mutually agreed." Cascade points to no mutual agreement on a price adjustment. Cascade neglects the balance of paragraph 4.1, which continued, "[Cascade] shall have no claims for additional payment for extras or changes unless the extra or changed Work . . . have been approved in writing by both [Jackson Dean] and [Cascade] prior to the extra or changed Work being performed." This aspect of paragraph 4.1 called for changes to be approved in writing before the work occurred. It is undisputed Cascade submitted its claim for a price adjustment only after completing a significant amount of the changed work. In the absence of mutual agreement, any price adjustment needed to be obtained in compliance with the procedures of paragraphs 4.2 and 5.2.

Cascade also does not establish that a construction change directive governed the work at issue. The record does not include any written order signed by the architect and the owner. To support the existence of a construction change directive, Cascade pointed in its opposition to summary judgment to testimony by Jackson Dean's superintendent. Greg Hiner testified there were several change orders that impacted Cascade's work and some were issued by the architect. But this testimony does not establish a construction change directive as that term is

11

defined, nor relieve Cascade of the obligation to provide notice of claiming amounts above the contract price. Moreover, the standard terms to which Cascade points also required notice to claim additional compensation, saying, "If the Contractor wishes to make a Claim for an increase in the Contract Sum, notice as provided in Section 15.1.3 shall be given before proceeding to execute the portion of the Work that is the subject of the Claim."

Cascade does not argue that it complied or substantially complied with the notice provisions. While Cascade provided some written indication its costs could increase, it does not argue it identified the portions of the work that would be affected, or provided the cost and time ramifications, a timely recovery plan, and a timely statement of claim, together with supporting information that would allow Jackson Dean to obtain corresponding price adjustments from Costco. Cascade's claims are barred by paragraphs 4.2 and 5.2, unless those paragraphs cannot be enforced under Cascade's alternative arguments.

II

Cascade's second argument is that even if the notice provisions governed its claim for additional compensation, there is a question of fact requiring trial on whether its compliance was excused for impossibility. To avoid summary judgment, Cascade was required to present evidence supporting a genuine issue of material fact. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). In this inquiry, we construe all evidence and the reasonable inferences therefrom in favor of the nonmoving party. Boyd, 197 Wn. App. at 142. The corollary of this rule is that a nonmoving party's declaration must be taken as true

unless it is inadmissible on other evidentiary grounds. Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 224, 522 P.3d 80 (2022). We review a summary judgment ruling de novo. Boyd, 197 Wn. App. at 142.

Cascade argues, "When a contractor omits information in a contractually required notice because it is impossible to determine the additional costs that will be incurred, this is evidence that strict compliance was waived due to the receipt of notice of impossibility." It relies on Weber Construction, Inc. v. Spokane County, 124 Wn. App. 29, 35, 98 P.3d 60 (2004). In Weber Construction, a county road contractor encountered boulders in the work area that were unsuitable for shallow fills and for building embankments. Id. at 34. The contractor invoked the formal contract procedures to obtain a price adjustment. Id. at 34. The contractor protested the county's change order, "asking where it should dispose of the unusable boulders." Id. at 35. In a second letter, the contractor again explained, "it could not make a cost estimate because the County had not told Weber where to dispose of the boulders." Id. We held there was a question of fact for trial on whether the county had waived compliance with the notice provisions, because it knew the contractor was required to provide a dollar cost estimate, was aware of this requirement, and was attempting to meet it, and the county failed to give specific information the contractor had requested. Id. at 35-36.

The evidence that Cascade presented in opposition to Jackson Dean's summary judgment motion is not analogous. Cascade did not invoke the contractual notice provisions and, as the contractor in Weber Construction did, attempt to comply while documenting specific reasons it could not comply. The

declaration testimony Cascade offered, which we accept as true under the summary judgment standard, established that Jackson Dean changed the work, the changes significantly impacted Cascade's work, and the impacts would increase cost. But the declaration does not explain that Cascade attempted to comply with the notice provisions, provide reasons it could not give estimates of the costs its work would entail under the changed conditions, or indicate that it depended on Jackson Dean for any information to do so. Cascade offered declaration testimony that "the various consequences of the construction schedule change that Jackson Dean directed in writing could not be determined up front because Cascade could not predict how quickly Jackson Dean's delayed dewatering would bring down the water table and Cascade could not determine how much interference would occur as a result of Jackson Dean's direction for Cascade to excavate at the same time and in the same location as dewatering was being installed." This testimony is too generalized to support a conclusion that compliance, or substantial compliance, was impossible at the time of Cascade's work. But it does not align with the facts justifying the outcome in Weber Construction in any event.

Weber Construction was based on the county's lack of response to the contractor's stated inability to comply with the notice provisions at the time of the county's change order. 124 Wn. App. at 35. The declaration testimony Cascade offered in litigation is not evidence that Jackson Dean made compliance impossible at the time of the change order by refusing to provide information requested at that time. Cascade's near contemporaneous April 28, 2020 letter documented that

there were impacts and would be price effects, but did not state, like the contractor's communications in Weber Construction, that it was invoking the notice provisions or depended on additional information from Jackson Dean to meet them. While Cascade went on to incur price impacts as it predicted, it did not invoke the notice provisions at that time either, or report cost impacts within five days as required by paragraph 5.2. The evidence that supported a question of fact for trial in Weber Construction is lacking. Cascade's impossibility argument is unavailing.

III

Cascade's third argument is that there is a question of fact requiring trial on whether Jackson Dean waived Cascade's compliance with the notice provisions. We again apply the summary judgment standard. Young, 112 Wn.2d at 225; Boyd, 197 Wn. App. at 142. Cascade argues the trial court should have found "reasonable jurors could have concluded from the evidence that Jackson Dean voluntarily and intentionally waived the written approval requirement when it issued construction change directives to Cascade." Cascade's evidence is insufficient to create a triable issue concerning waiver.

A contracting party may waive a contract provision by conduct, if there are unequivocal acts of conduct evidencing an intent to waive the contract's requirements. Mike M. Johnson, 150 Wn.2d at 391. Cascade fails to point to evidence of unequivocal acts by Jackson Dean showing that it was waiving compliance with the notice provisions. Cascade does not cite authority that issuing change orders alone can amount to a waiver of notice provisions, and Mike M.

15

Johnson holds that a contracting party's having actual notice of another's protest does not, by itself, imply waiver. Id. In changing the work, Jackson Dean did not waive Cascade's contractual obligation to give notice of an intent to claim additional compensation. Cascade's April 28, 2020 letter is insufficient to create a fact question premised on unequivocal acts of conduct by Jackson Dean. The letter did not specifically request any action by Jackson Dean, but, to the contrary, advised, "We will notify [Jackson Dean] when [Cascade] has been directly delayed and impacted." The May 7, 2020 e-mail exchange includes a request by Jackson Dean for more effective communication, but lacks any substantive response from Cascade concerning the notice provisions or indicating that any action by Jackson Dean was expected or required. This evidence fails to show an unequivocal act by Jackson Dean indicating it was waiving compliance with the notice provisions. Cascade's waiver argument is unavailing.

IV

Cascade's fourth argument is that it should have been permitted to amend its complaint to add a claim under the cardinal change theory. In its response to Jackson Dean's summary judgment motion, Cascade included a section requesting the court to allow it to amend its complaint to seek quantum meruit recovery under the cardinal change theory. The parties and the superior court did not address this request at the summary judgment hearing, and the superior court did not address it in the order granting Jackson Dean's motion. We review a trial court's denial of leave to amend a complaint for " 'manifest abuse of discretion.' " Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 165, 736 P.2d 249 (1987) (quoting

Del Guzzi Constr. Co. v. Glob. Nw., Ltd., 105 Wn.2d 878, 888' 719 P.2d 120 (1986)). Cascade's request to add a new claim included in its response to Jackson Dean's summary judgment motion was not noted for consideration to obtain leave of court to amend in compliance with the King County Superior Court Local Civil Rule 7. It also failed to comply with CR 15(a), because it did not meet the requirement of the rule that "a copy of the proposed amended pleading, denominated 'proposed' and unsigned, shall be attached to the motion." It was not an abuse of discretion for the trial court to implicitly deny Cascade's procedurally defective request to add a new claim and reach Jackson Dean's properly noted summary judgment motion.

V

Cascade's fifth argument challenges the superior court's award of reasonable attorney fees to Jackson Dean under the contract and the lien statute. Paragraph 5.7 of the subcontract provided, "In the event that . . . litigation is instituted to enforce or contest the provisions of this SUBCONTRACT or adjudicate any question arising under this SUBCONTRACT, the prevailing party shall be entitled to all of its attorney fees and all costs of such . . . litigation." RCW 60.04.181(3) states, in regard to construction liens, "The court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable."

17

Cascade argues that even if Jackson Dean was entitled to prevail on the aspects of the parties' dispute adjudicated in the summary judgment motion, Jackson Dean was nevertheless not properly viewed as a prevailing party. Cascade argues this is so because, it says, when the parties' settlement of other issues is factored into the computation, Cascade should be viewed as the prevailing party in the action. Cascade argues, "Washington courts can determine the prevailing party by considering the underlying settlement." It relies on Hernandez v. Edmonds Memory Care, LLC, 10 Wn. App. 2d 869, 450 P.3d 622 (2019). There, laborers on a construction project who had not been paid unsuccessfully sought wages from the subcontractor who had hired them and from the general contractor's superintendent. Id. at 871. The laborers retained counsel, filed a lien against the property, and filed a lawsuit. Id. at 872. The project owner promptly paid the wage claim, but not the incurred attorney fees. Id. at 872-73. We held the laborers were prevailing parties entitled to reasonable attorney fees under RCW 60.04.181(3), despite the fact the owner had not contested their wage claim once they filed it. Id. at 875, 880-81. Among other reasons, we observed, "laborers often do not have the resources to hire attorneys" and the "fee shifting statute provides a reasonable way to provide laborers with access to courts to enforce their right to be paid for work they have performed." Id. at 881.

Hernandez did not hold that a court should incorporate settlement recoveries into the calculus of who is a prevailing party under RCW 60.04.181(3). The court indicated that after the owner received the laborers' complaint, it paid the claimed wages when it "sent the laborers' counsel a check for the lien amount,

18

along with a letter thanking counsel for giving [the owner] notice of the laborers' claims and stating that [it] was not aware of them before counsel's notification." 10 Wn. App. at 872. The court did not identify this payment as a settlement. Separately the owner offered to "settle this matter" by paying a portion of the claimed fees, but this was rejected and the parties litigated the issue of fees. Id. The reasoning of Hernandez does not extend to Cascade, who sued, resolved certain claims by compromise, chose to litigate others, and did not succeed on the claims it litigated. On the claims the parties litigated to judgment, Jackson Dean was the prevailing party and was properly awarded reasonable attorney fees under paragraph 5.7 of the subcontract and under RCW 60.04.181(3). For the same reasons, and under RAP 18.1(a), we award Jackson Dean reasonable attorney fees on appeal.

Affirmed.

_____
Birk, J.

WE CONCUR:

_____          _____
Díaz, J.                                   Bremner, J.